William Dale HAMKER, et ux, Anita Hamker, Plaintiffs-Appellants,

v.

DIAMOND SHAMROCK CHEMICAL CO., Defendant-Appellee.

No. 84–1278.

United States Court of Appeals, Fifth Circuit.

April 1, 1985.

Jerre S. Williams, Circuit Judge, concurred specially with opinion.

Bruce E. Anderson, Austin, Tex., for plaintiffs-appellants.

Underwood, Wilson, Berry, Stein & Johnson, Kelly Utsinger, Amarillo, Tex., for defendant-appellee.

Appeal from the United States District Court for the Northern District of Texas.

Before GEE, WILLIAMS and JOLLY, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

The plaintiffs-appellants, William and Anita Hamker, filed suit under 33 U.S.C. § 1365(a) of the Federal Water Pollution Control Act (the Act) seeking an injunction against Diamond Shamrock Chemical Co. (Diamond Shamrock) and the imposition of civil penalties. They also appended several claims arising under state law under the authority of *United Mine Workers v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). The district court dismissed under Federal Rule of Civil Procedure 12b(1) for failure to assert grounds for subject matter jurisdiction. We affirm.

## I.

In January of 1983, a pipeline owned by Diamond Shamrock began to leak into a creek which flowed onto the Hamkers' property in Lipscomb County, Texas. Before the leak was detected and the flow of oil shut down, a period of about two weeks, approximately 2,400 barrels of crude petroleum were discharged into the creek. Diamond Shamrock's employees made an effort to clean up the spill. The Hamkers, however, allege that these efforts were grossly inadequate and resulted in perpetuating rather than alleviating the contamination.

The Hamkers sought an injunction requiring Diamond Shamrock to take reasonable precautions including reasonable monitoring of the pipeline to insure that violation of the Act was not repeated on their property, or elsewhere, in the future. They allege that the corporation operated the pipeline negligently and continues to do so. They also sought the imposition of civil penalties of $10,000 a day under the provisions of 33 U.S.C. § 1319(d), and an award of costs of litigation, including reasonable attorney's fees and expert witness fees under the provisions of 33 U.S.C. § 1365(d). The Hamkers' appended state law causes of action based on negligence by Diamond Shamrock in the operation and maintenance of its pipeline and in failing to take timely actions to clean up the spill. The plaintiffs sought under state law (the Act provides no recovery of damages) $40,000 for damage to fish and aquatic life in the stream, loss of the use of the stream for watering of their livestock, and loss of the recreational, commercial, and aesthetic value of the property, as well as $120,000 in punitive damages for Diamond Shamrock's gross negligence.

## II.

Suit was filed in the United States District Court for the Northern District of Texas, Amarillo Division, on December 1, 1983. On December 29, 1983, the defendant filed its answer denying substantially all of the plaintiffs' allegations and further asserting that the court lacked subject matter jurisdiction of the case and that the complaint failed to state a claim upon which relief could be granted. By order dated January 4, 1984, the district court stated that it intended to treat the defendant's allegations of lack of subject matter jurisdiction as a motion to dismiss under Fed.R.Civ.P. 12(b) and ordered the parties to submit briefs on this issue according to a schedule established by the court. On January 27, 1984, the defendant filed its brief in support of its Motion to Dismiss for Lack of Subject Matter Jurisdiction. On February 24, 1984, the plaintiffs filed their brief in opposition to the motion. That same day, the court issued its order granting the defendant's motion to dismiss. The district court's order stated that it lacked subject matter jurisdiction because: (1) section 1365 authorizes only prospective relief the applicability of which, implicit by the court's action, was lacking here; (2) the statute does not permit citizen suits for past violations, only current violations; (3) the statute does not allow for recovery of damages; and (4) the statute does not create an implied cause of action.

We affirm the dismissal.

## III.

Because the complaint here does not allege that Diamond Shamrock is "in violation" of an effluent standard, limitation or order, as required by section 1365, the Hamkers fail to state allegations sufficient to support jurisdiction in this case. The Hamkers, as they must, base their federal law claims on section 1365 of the Act, which permits citizen suits where the defendant is "alleged to be in violation of ... an effluent standard or limitation under ... [the Act] or ... an order issued by the Administrator or a State with respect to such a standard or limitation...." 33 U.S.C. § 1365(a)(1). However, for the reasons discussed below, even if the Hamkers' complaint is liberally interpreted as alleging a past discharge of oil by Diamond Shamrock with continuing negative effects as well as continued negligent operation of

the pipeline, the complaint does not satisfy section 1365's requirement that the defendant be alleged to be "in violation" of an effluent standard, limitation or order.

## IV.

■ The language of section 1365 and the structure of the Act convince us that a complaint brought under section 1365 must allege a violation occurring at the time the complaint is filed. We first look to the language of section 1365. "[T]here is no need to refer to legislative history where the statutory language is clear.... This canon of construction has received consistent adherence in our decisions." *Ex Parte Collett,* 337 U.S. 55, 69 S.Ct. 944, 947, 93 L.Ed. 1207 (1949).[1]

### A.

By its ordinary meaning the language of section 1365 requires an allegation of an ongoing violation: "any citizen may commence a civil action ... against any person ... *who is alleged to be in violation of* ..." the relevant standards, limitations or orders (emphasis added). Hamker asserts that "to be in violation of" means "to have violated"; however, this interpretation obviously strains the grammar of the statute and diverges from its ordinary meaning. "[Section 1365] does not provide for suits against parties alleged to have violated an effluent standard or limitation in the past...." *City of Evansville v. Kentucky Liquid Recycling,* 604 F.2d 1008, 1014 (7th Cir.1979), *cert. denied,* 444 U.S. 1025, 100 S.Ct. 689, 62 L.Ed.2d 659 (1980) (cited with approval in *Middlesex County Sewerage Authority v. National Sea Clammers,* 453 U.S. 1, 101 S.Ct. 2615, 2625 n. 28, 69 L.Ed.2d 435 (1981).

### B.

The statutory scheme here also indicates that where a complaint alleges no ongoing violation of an effluent standard, limitation or order, section 1365 provides for no citizen's right of action. Primary enforcement

responsibility under the Act lies with the states and the Administrator. Section 1319(b) authorizes the Administrator to immediately commence a civil action where he finds any person is in violation of an effluent limitation, standard or order. The central role of the Administrator is to some degree "supplemented by the express citizen-suit provisions in ... [section 1365(a)]." *Middlesex* at 2623. Nevertheless, that the Administrator plays the central role in the enforcement of the Act is apparent from his power to issue compliance orders, to displace the states completely in enforcing the Act if their efforts are insufficient, to promulgate standards and regulations implementing the Act, to conduct continuing evaluations of potential losses or costs that might result from enforcement of the Act, and even to waive certain standards or limitations in certain circumstances. *Chemical Manufacturers Ass'n v. Natural Resources Defense Council,* — U.S. ——, 105 S.Ct. 1102, 84 L.Ed.2d 90 (1985). While these powers of the Administrator "are supplemented by the express citizen-suit provisions in ... [Section 1365(a)]," this section obviously does not permit the citizen to *duplicate* the Administrator's powers, as the Hamkers argue. Thus, although we do not decide an issue not before us, the Administrator may have the power to seek some redress for past violations, but this is no reason to waive the statutory requirement that *citizens* must allege that the defendant is "in violation" of an effluent standard, limitation or order.

■ The notice requirement of section 1365 also strongly indicates that it is the Administrator who is of central importance in the enforcement of the Act and that citizens are limited to bringing actions only to remedy an ongoing violation. Section 1365(b) forbids any citizen action under 1365(a) where notice has not been given to the Administrator, the state and the alleged violator, and in many instances sixty

---

**1.** We note that here, as in *Collett,* the legislative history supports our decision, although we need not, and do not, base our decision on legislative materials.

days notice is required. The requirement that notice be given to the responsible officials highlights their primary role in enforcing the Act compared to the supplementary position of the citizen; indeed, where the officials respond to the notice by diligently prosecuting an action against the alleged violator, the citizen is barred from bringing a separate suit. Moreover, it is most reasonable to read the requirement that notice also be given to the alleged violator as an indication that where the violator responds to the notice by bringing himself into compliance, the citizen loses the right to bring suit under 1365(a), just as he loses the right to commence an action where the Administrator or the state responds by diligently prosecuting an action against the alleged violator, City of Evansville; *but see Friends of the Earth v. Carey*, 535 F.2d 165, 175 (2d Cir.1976).

In summary, the Act is structured to concentrate enforcement authority in the Administrator and the states, with supplementary power given to citizens under section 1365(a). This supplementary power may be exercised only where neither the authorities nor the polluter acts to terminate the ongoing violation. Both the central role of the Administrator and the notice provisions of section 1365(b) support the plain meaning of section 1365(a)'s requirement that the defendant be alleged to be "in violation" of an effluent limitation, standard or order.

### C.

The Supreme Court has stated that one of the primary congressional purposes behind limiting citizen suits was to preclude the possibility that section 1365 suits would place an undue burden on the federal courts. *Middlesex* 101 S.Ct. at 2625. The Court cited a statement by one sponsor, Senator Hart, as especially important:

> It has been argued, however, that conferring additional rights on the citizen may burden the courts unduly. I would argue that the citizen suit provision of S. 4358 has been carefully drafted to prevent this consequence from arising. First of all, it should be noted that the

bill makes no provision for damages to the individual. It therefore provides no incentives to suit other than to protect the health and welfare of those suing and others similarly situated. It will be the rare, rather than the ordinary, person, I suspect, who, with no hope of financial gain and the very real prospect of financial loss, will initiate court action under this bill." 116 Cong.Rec. 33104 (1970).

*Middlesex*, at 2625 n. 27.

If section 1365 were interpreted as permitting citizen suits for civil penalties for past violations, all state damage claims which could be brought under pendent jurisdiction could be litigated in a federal forum, thus undermining congressional intent to limit the burden on the district courts. Since the Act provides for awards of attorney's fees and expenses, there would be a substantial incentive to bring suit under the Act rather than in state court. To adopt an interpretation of section 1365 which would so easily allow state damage actions to be brought in federal court with the additional incentive of attorney's fees would undermine the congressional design to limit actions brought under the Act to those plaintiffs motivated solely by the desire "to protect the health and welfare of those suing and others similarly situated."

### D.

To summarize, the ordinary meaning of the words of the statute, the statute's structure and its prior Supreme Court interpretation indicate that section 1365 does not authorize citizen suits seeking either injunctive relief or the imposition of civil penalties where the defendant is not alleged to be in violation of an effluent standard, limitation or order. The section "authorizes only prospective relief" even though "civil penalties ... may be ordered by the court." *Middlesex* at 2619, 2623 n. 25.

### V.

### A.

The complaint here fails to allege that the defendant is in violation of an effluent

standard, limitation or order; accordingly, we affirm the district court's dismissal of the action for failure to state appropriate grounds for jurisdiction. Liberally interpreted, the complaint alleges that the discharged oil is leaking into ground water and has left lasting damage to grasslands, that Diamond Shamrock's pipeline which leaked the oil was negligently operated because the company did not at least inspect it in a reasonable manner, and that this negligence persists; however, none of these allegations is sufficient to satisfy the section 1365 requirement that the defendant be alleged to be in violation of an effluent standard, limitation, or order. The district court therefore correctly dismissed the complaint.

The Hamkers' allegation that residual effects of the leak threaten groundwater and grassland does not amount to an allegation that Diamond Shamrock is in violation of the Act. Section 1311(a) of the Act prohibits all unlicensed discharges of pollutants into navigable waterways and section 1321(b)(3) similarly restricts discharges of oil and hazardous substances; nevertheless, even liberally construed, the complaint alleges only a single past discharge with continuing effects, not a continuing discharge. However, even if the complaint is construed to allege a continuing seepage into groundwater of the now-dispersed leaked oil, we cannot say this amounts to a continuing violation of section 1311 because that section prohibits only "discharges of any pollutant," which in turn are defined in section 1362(12) to be "any addition of any pollutant to navigable waters, *from* any *point source.*" A "point source" is a "discernible, confined and discrete conveyance, including but not limited to any pipe...." 33 U.S.C. § 1362(14). No continuing addition to the ground water from a point source is alleged, nor could it be alleged under the facts set forth in this complaint. Rather, the complaint alleges, necessarily, only that there are continuing *effects* from the past discharge, and such an allegation is insufficient for the purposes of section 1365.

This court has specifically rejected an expansive definition of "point source."

Plaintiff would merely require a showing of the original sources of the pollution to find a statutory point source, regardless of how the pollutant found its way from that original source to the waterway. According to this argument, the broad drainage of rainwater carrying oily pollutants from a road paralleling a waterway, or animal pollutants from a grazing field contiguous to the waterway, would violate the Act. Whether or not the law should prohibit such pollution, this Act does not. The focus of this Act is on the "discernible, confined and discrete" conveyance of the pollutant, which would exclude natural rainfall drainage over a broad area.

*Sierra Club v. Abston Const. Co.,* 620 F.2d 41, 44 (5th Cir.1980).

The complaint alleges facts constituting only one "discharge" of oil from the defendant's pipe; the complaint does not allege a continuing discharge from a point source. Mere continuing residual effects resulting from a discharge are not equivalent to a continuing discharge.

### B.

Neither the Hamkers' assertion that Diamond Shamrock has negligently operated its pipeline nor their assertion that the corporation continues to operate the pipeline negligently amounts to an allegation that the defendant is presently violating an effluent standard, limitation or order. The Act does not impose a negligence standard; rather, it gives the Administrator and the states the right to promulgate standards for the implementation of the Act's objectives within limits set by the Act. Unless a violation of a standard or limitation set forth in the Act or a violation of an administrative order or rule promulgated under the authority of the Act is alleged, no suit under section 1365 may be brought; the courts are not empowered by

the Act to establish their own set of enforcement standards.[2]

The Act is structured to give the Administrator power to promulgate regulations to effectuate its purposes; if the Administrator chooses to promulgate a regulation imposing an obligation to monitor their pipelines on owners or operators of oil pipelines, the Act seems expressly to authorize such action:

Whenever required to carry out the objective of this chapter,....

(A) the *Administrator shall require the owner or operator of any point source to* ... (iii) *install, use and maintain such monitoring equipment or methods (including where appropriate, biological monitoring methods),* ... and (v) *provide such other information as he may reasonably require....*

33 U.S.C. § 1318 (emphasis added).

The Hamkers strenuously assert that our interpretation of section 1365's "in violation" requirement will undermine the Act by allowing polluters to "turn off the spigot" whenever a citizen brings suit, only to continue polluting later on. This argument fails to take into account the Administrator's nondiscretionary duty to promulgate adequate regulations under section 1316(b)(1)(B). We express no opinion as to whether the Administrator is required by section 1316(b)(1)(B) or some other section of the Act to promulgate regulations which would require Diamond Shamrock to monitor its pipeline or otherwise operate it non-negligently; the Hamkers have not brought suit against the Administrator nor have they alleged Diamond Shamrock to be in current violation of any regulation in negligently operating its pipeline.

Because the Hamkers do not allege that any regulation promulgated under the Act requires the reasonable monitoring or non-negligent operation of a pipeline, and because there is no present discharge in violation of section 1311, the complaint's aver-ment that the pipeline is not and was not reasonably maintained is not an allegation that the defendant is in violation of an effluent standard, limitation or order.

## C.

In addition to the foregoing reasons, the complaint was properly dismissed because it fails to allege facts which, if proved, would warrant prospective relief. While section 1365 "allows suits under the Act by private citizens, ... [it] authorizes only prospective relief...." *Middlesex* 101 S.Ct. at 2619. The Hamkers' complaint seeks the imposition of an injunction ordering Diamond Shamrock to operate its pipeline non-negligently. However, as discussed above, the Act does not impose a negligence standard; the only violation of the Act which is alleged here is a single past discharge for which no prospective relief is possible. The Hamkers' complaint also seeks the imposition of civil penalties of $10,000 per day of violation under section 1319(d) and 1365(a). It is clear that section 1365(a) authorizes the imposition of civil penalties under 1319(d) by the court in a citizen suit: "Under the ... [Act], civil penalties, payable to the Government, also may be ordered by the court ... 33 U.S.C. § 1365(a)." *Middlesex* at 2623 n. 25. However, since section 1365(a) authorizes civil penalties only as prospective relief, the Hamkers may not sue to impose civil penalties for the one violation alleged here.

## VI.

In summary, the complaint fails to allege that the defendant is in violation of an effluent limitation, standard or order. Not the allegation of a past leak from Diamond Shamrock's pipeline, nor continuing effects on groundwater, nor negligent operation of the pipeline constitutes an allegation that the defendant is in violation of an effluent limitation, standard or order. Neither are

---

**2.** "Authority granted to citizens to bring enforcement actions under this section is limited to effluent standards or limitations established ad-ministratively under the Act." S.R. No. 92–414 (Oct. 28, 1971).

allegations presented which, if proved, warrant any form of prospective relief, the only type of relief authorized by section 1365. Accordingly, the complaint does not meet the requirements of section 1365 and so fails to allege grounds for jurisdiction. We therefore affirm the district court's dismissal of the complaint.

AFFIRMED.

JERRE S. WILLIAMS, Circuit Judge, specially concurring:

The opinion of my brother Jolly carries my full concurrence. I wish only to add one observation by way of emphasis. The allegation in this case is based upon only a single event of pollution. I concur with the interpretation of the Court that such a single event does not meet the statutory requirement of a polluter being "in violation ..." for purposes of a citizen suit.

I write to emphasize the narrow applicability of the holding of the Court. Appellants urge that the interpretation of the statute demanding a current violation of the standards would enable a polluter to "turn off the spigot" whenever a citizen brings suit. The much more likely situation would be that of a chronic episodic violator who happened not to be in violation at the precise time the citizen brought suit and with special care then avoids polluting while the suit pends. I would urge that the requirement that the polluter be "in violation" clearly is broad enough to cover the chronic episodic violator or the violator who intentionally "turns off the spigot" just before a citizen brings suit. In either of these circumstances, the statute should surely be interpreted to cover such violations as being current. Such circumstances are not at all the same as this case, so I wish to emphasize under the statute the difference between a single past event and a course of polluting conduct where continuity happens to be broken at the time citizen complaint is made and pursued. In the latter situation, the polluter is "in violation".