**PROFFITT, Raymond**

v.

**ROHM & HAAS.**

**Civ. A. No. 85–4966.**

United States District Court,
E.D. Pennsylvania.

Aug. 12, 1987.

---

1. *United States v. Rosenfield*, 780 F.2d 10 (3d Cir.1985) (per curiam), *cert. denied*, —— U.S. ——, 106 S.Ct. 3294, 92 L.Ed.2d 709 (1986).

Randall J. Brubaker, Philadelphia, Pa., for Raymond Proffitt.

Hershel J. Richman, Philadelphia, Pa., for Rohm & Haas.

## MEMORANDUM

CLIFFORD SCOTT GREEN, District Judge.

The Clean Water Act (the "Act"), 33 U.S.C. § 1251 *et seq.*, authorizes citizens to bring suits on their own behalf against any person who is alleged to be in violation of an effluent standard or limitation or an order issued by the Administrator of the Environmental Protection Agency ("EPA") or a state regarding such standard or limitation. 33 U.S.C. § 1365(a)(1). Pursuant to this statutory provision, Raymond Proffitt brought suit against Rohm & Haas alleging violations of section 301(a) and 402(a) of the Act, 33 U.S.C. §§ 1311(a) and 1342(a), and of sections 301, 307 and 402 of the Pennsylvania Clean Streams Law, 35 P.S. § 691.1 *et seq.* Plaintiff seeks declaratory and injunctive relief, the imposition of civil penalties and the award of costs, including attorney's fees.

Pending are Rohm & Haas' motion for summary judgment and Mr. Proffitt's cross-motion for partial summary judgment. Plaintiff contends that defendant's records show repeated violations of the effluent limitations, thus entitling plaintiff to both a declaration that defendant has violated the Act, and injunctive relief to be followed immediately by a hearing on penalties. Essentially, Rohm & Haas argues that, because there was no enforceable effluent limitation in place, it cannot be in violation of either the federal or state statutes.

The parties agree that citizen enforcement suits pursuant to section 505, 33 U.S.C. § 1365(a), were intended to involve only a determination of whether EPA permit limitations were violated. In this regard, plaintiff points to the following discussion of section 505 citizen suits in the Senate Report which accompanied the bill which was enacted:

> Section 505 would not substitute a "common law" or court-developed definition of water quality. An alleged violation of an effluent control limitation or standard, would not require reanalysis of technological in [sic] other considerations at the enforcement stage. These matters will have been settled in the administrative procedure leading to the establishment of such effluent control provision. Therefore, an objective evidentiary standard will have to be met by any citizen who brings an action under this section.
>
> . . . .
>
> The standards for which enforcement would be sought either under administrative enforcement or through citizen enforcement procedures are the same.... Consequently, the factual basis for enforcement of requirements would be available at the time enforcement is sought, and the issue before the courts would be a factual one of whether there had been compliance.

S.Rep. No. 414, 92d Cong., 1st Sess., *reprinted in* 1972 U.S.Code Cong. & Admin. News 3668, 3745–46.

Thus, decision on the motions turns upon whether the EPA permit issued to defendant contains a standard and limitation enforceable by plaintiff. As to this issue, there are no genuine issues of material fact. For the reasons set forth below, I

conclude that summary judgment must be granted in favor of defendant Rohm & Haas.

## I.

Rohm & Haas operates a plastics and synthetic resins and industrial organic chemicals facility in Bristol Township, Pennsylvania. It treats on-site the wastewater from its industrial operations then discharges the treated effluent through holding ponds into a tributary of the Delaware River. The discharge of wastewater into navigable waters is illegal unless done in compliance with a National Pollutant Discharge Elimination System ("NPDES") permit. 33 U.S.C. § 1311(a). Violations are alleged at a single discharge point, namely Outfall 009.

In 1974, the Environmental Protection Agency ("EPA") administered the NPDES permit program for wastewater dischargers located in Pennsylvania. EPA issued an NPDES permit to Rohm & Haas for the Bristol facility on September 30, 1974. The Pennsylvania Department of Environmental Resources ("DER") issued a certification also on that date. Section 401 of the Clean Water Act, 33 U.S.C. § 1341, provides Pennsylvania and other states with an opportunity to participate in the permit process through certification procedures. Pursuant to section 401, the state must certify that the discharge complies with applicable effluent limitations and water quality standards before a Federal license or permit can be granted. The state's certification also may contain additional limitations. 33 U.S.C. § 1341(d). The EPA permit must include any additional limitations included in the state's certification. *Id.*

After the NPDES permit was issued, Rohm & Haas filed administrative appeals challenging the NPDES permit as certified. Rohm & Haas requested an adjudicatory hearing before the EPA in order to challenge the pH and total suspended solids ("TSS") limitations of the permit. In addi-

tion, Rohm & Haas appealed DER's imposition of pH and TSS limitations to the Pennsylvania Environmental Hearing Board ("EHB").

On August 22, 1975, DER issued a recertification, later amended on September 18, 1975. The 1975 recertification set the pH standard units between 6.0 and 9.0 at all times and the effluent limitation for TSS at 20 mg/1 daily average and 100 mg/1 daily maximum.

Rohm & Haas appealed the recertification to the EHB on October 17, 1975, challenging the DER recertification's pH and TSS limitations.

During the time that the administrative proceedings were pending before EPA and DER, Rohm & Haas allegedly determined that the cause of its exceeding the pH and TSS limitations for the discharge Outfall 009 was natural biological growth, algae, in the holding ponds rather than industrial wastewater.

While the administrative appeals were pending, Rohm & Haas, EPA and DER entered into a stipulation, certified by an EPA Administrative Law Judge on May 6, 1976.

The stipulation states:

4. Upon the EPA's receipt of documentation from the permittee [Rohm & Haas] that the permittee has commenced action in an appropriate state forum to obtain relief from the effluent limitations as set forth in paragraph 2 above,[1] the EPA shall stay the enforcement of said limitations and conditions.

5. The effluent limitations and conditions set forth in paragraph 2 above as they appear in the permit shall be asterisked, and the following provision shall be incorporated into the permit and shall control the asterisked effluent limitations and conditions:

   a. Upon the EPA's receipt of documentation from the permittee that the permittee has commenced action in an

---

1. Paragraph 2 sets forth the following effluent limitations and conditions specified by DER for inclusion in the NPDES:

Total suspended solids (TSS)—daily average of 20 mg/1 and a daily maximum of 100 mg/1.
pH—not less than 6.0 and no greater than 9.0.

appropriate state forum to obtain relief from the effluent limitations and conditions asterisked, the EPA shall stay the enforcement of said limitations and conditions.

b. After a final administrative determination and/or judicial determination, by the State of Pennsylvania with respect to the effluent limitations and conditions set forth in paragraph 2 above, said effluent limitations and conditions shall be modified by the EPA in accordance with such final determination.

c. At any time up to thirty (30) days after said final administrative determination or judicial determination the permittee may request and the EPA shall grant an adjudicatory hearing pursuant to 40 C.F.R. Part 125 with respect to such effluent limitations and conditions. The permittee shall be afforded the same rights and privileges as any party granted an adjudicatory hearing pursuant to 40 C.F.R. Part 125. Such adjudicatory hearing shall be limited to consideration of the following issues:

1) The legal issues of the scope of EPA's authority to review effluent limitations and conditions certified by the State of Pennsylvania pursuant to Section 401 of the Federal Water Pollution Control Act and to review the validity of such certification by the State of Pennsylvania under Section 401.

2) The specific effluent limitations and conditions, including the validity of the State's certification, provided that an administrative or judicial determination is made that the permittee is entitled to an adjudicatory hearing on such limitations and conditions and their State certification.

On July 14, 1976, EPA issued Amendment Number 1 to the NPDES permit and on July 15, 1976, sent it to Rohm & Haas. The letter accompanying the amendment states that the revisions of the NPDES were effective upon receipt. The NPDES permit was amended by placing an asterisk next to the effluent limitations and attaching a page from the stipulation including the provision to stay enforcement of the limitations and to modify the permit.

Specifically, the amendment incorporated paragraphs 5.a. through 5.c.2. of the stipulation quoted above into the permit. First, upon receipt by EPA of documentation from Rohm & Haas that it had begun an action in an appropriate Pennsylvania forum to get relief from the effluent limitations and conditions at issue here, EPA would stay the enforcement of those limitations and conditions. Second, after a final administrative determination, judicial determination or both by the state of Pennsylvania with respect to the effluent limitations and conditions, EPA would modify those limitations and conditions in accordance with the state's final determination. Thereafter, Rohm & Haas forwarded documentation to the EPA stating that Rohm & Haas had begun its appeal to the EHB.

Rohm & Haas then sent a letter dated December 22, 1977, to EPA proposing pH and TSS effluent limitations and special monitoring requirements.

On January 30, 1978, DER revoked, by letter, all prior certifications and waived its right to certify all effluent limitations. According to the letter, the waiver superseded the requirements of DER's original certification of September 30, 1974, and the amended certifications dated September 18, 1975 and February 11, 1976. Rohm & Haas then withdrew, by letter dated February 15, 1978, its administrative appeal pending before EHB.

After DER waived its certification, EPA began to process an NPDES permit amendment in response to the December 22, 1977, proposal of Rohm & Haas. EPA sent to Rohm & Haas on April 26, 1978, a public notice of EPA's intention to amend the NPDES permit and a copy of the draft amendment.

Rohm & Haas posted the EPA public notice in accordance with EPA regulations and certified this fact to EPA by letter. EPA has not, however, modified the NPDES permit.

## II.

The determination of the rights and obligations of the parties pursuant to the Act turns upon the legal significance of EPA's amendment of the NPDES. The amendment clearly sets forth the action to be taken by EPA, namely staying enforcement of the effluent limitations, and leaves no basis for an interpretation inconsistent with the words of the amendment.

In pertinent part, the amendment states:

a. Upon the EPA's receipt of documentation from the permittee [Rohm & Haas] that the permittee has commenced action in an appropriate state forum to obtain relief from the effluent limitations and conditions asterisked, the EPA shall stay the enforcement of said limitations and conditions.

As evidenced by this language, the limitations remained in force, subject to the stay of enforcement pending the outcome of proceedings between Rohm & Haas and DER. DER revoked all prior certifications and waived its right to certify on January 30, 1978. What remained was a matter between EPA and Rohm & Haas. The amendment further provided for subsequent modification of the standards by EPA:

b. After a final administrative determination and/or judicial determination, by the State of Pennsylvania with respect to the effluent limitations and conditions set forth in paragraph 2 above, said effluent limitations and conditions shall be modified by the EPA in accordance with such final determination.

It is clear that the amendment, a result of the stipulation certified by the Administrative Law Judge, was intended by EPA to preclude its own enforcement of the limitations except in accordance with the provisions of the stipulation incorporated into the amendment. While plaintiff argues that the amendment is legally ineffective because of public notice deficiencies, he has not cited to any authority that requires public notice for an amendment which merely limits the enforcement of standards and limitations pending further administrative proceedings. Indeed, the amendment limited only enforcement proceedings. The EPA letter of July 15, 1976, to Rohm & Haas stated in pertinent part that the amendment revisions resolved the request of Rohm & Haas for an adjudicatory hearing previously granted regarding the permit. Absent the amendment, the grant of an adjudicatory hearing automatically would have stayed the standard and limitation and, thus, enforcement.

In addition to the issue of the stay of EPA's enforcement of the limitations is plaintiff's argument that the permit amendment does not bar a citizen's suit to enforce the standard and limitation. Section 505, 33 U.S.C. § 1365(a), provides:

Except as provided in subsection (b) of this section, any citizen may commence a civil action on his own behalf—

(1) against any person ... who is alleged to be in violation of (A) an effluent standard or limitation under this chapter....

Clearly, plaintiff has standing pursuant to section 505 to bring suit. Because I conclude that EPA could not succeed in a suit against Rohm & Haas for alleged violation of the standard and limitation of the permit for Outfall 009, I also conclude that plaintiff cannot succeed in his citizen's suit which is based upon the same alleged violation of the permit. *Hamker v. Diamond Shamrock Chem. Co.,* 756 F.2d 392, 395–96 (5th Cir.1985). Also, plaintiff is not entitled to any remedy other than those authorized by the Act. *See Middlesex County Sewerage Auth. v. National Sea Clammers Ass'n,* 453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981). Defendant is not in violation of the permit as amended. Accordingly, Rohm & Haas cannot be found to be in violation of the Act.

Also, there is no violation of the Pennsylvania Clean Streams Law because it is clear that on January 30, 1978, the DER revoked all of its prior certifications and waived its right to certify all effluent limitations. Plaintiff argues that DER lacked the power on January 30, 1978, to revoke its certification order which became final. I conclude that the appeal of Rohm & Haas was timely, and, thus, DER had the power

to revoke its certification order. Moreover, while there is no controlling Pennsylvania authority, I predict that the Pennsylvania Supreme Court in the factual context of this case would not decide that DER was powerless to withdraw its certification. Accordingly, I conclude that Rohm & Haas could not violate the Pennsylvania Clean Streams Law because DER had withdrawn its certification.

In sum, upon a review of the undisputed facts and the legal arguments, I find that enforcement of the standard and limitation had been stayed by the stipulation and amendment pursuant thereto. A private citizen has no greater right to enforce the standard and limitation than those rights of EPA. EPA's right to enforce is, at this time, still limited to enforcement in accordance with the stipulation and amended permit. Accordingly, I will grant defendant's motion for summary judgment and will deny plaintiff's cross-motion for partial summary judgment. An appropriate order follows.