ATLANTIC STATES LEGAL FOUNDA-
TION, INC. and Rainbow Alliance for a
Clean Environment, Plaintiffs,

v.

PAN AMERICAN TANNING
CORPORATION,
Defendant.

No. 90–CV–899.

United States District Court,
N.D. New York.

May 28, 1992.

Peter Henner, Albany, NY, for plaintiffs.

Whiteman Osterman & Hanna (Philip H.
Dixon, Terresa M. Bakner, of counsel), Al-
bany, NY, for defendant.

## MEMORANDUM–DECISION AND ORDER

McCURN, Chief Judge.

This action arises under the "citizen suit" provision of the Federal Water Pollution Prevention and Control Act ("Clean Water Act" or "Act"), 33 U.S.C. § 1365 (1988). Plaintiffs commenced this suit in 1990 seeking punitive, injunctive, and declaratory relief from defendant's alleged illegal discharge of industrial wastewater in Fulton County, New York. This court has jurisdiction over plaintiffs' claims pursuant to 28 U.S.C. § 1331 (1988). Presently before the court are plaintiffs' motion for partial summary judgment and defendant's cross motion for summary judgment.

### I. BACKGROUND

#### A. Facts giving rise to this suit

Defendant Pan American Tanning Corp. ("Pan American") operates a tannery in Gloversville, New York. During its production process, Pan American discharges its wastewater through the sewer system to the Gloversville–Johnstown Wastewater Treatment Facility (hereinafter referred to as "facility" or "sewage plant"). The facility in turn discharges treated wastewater into the Cayudetta Creek in Fulton County. Pan American's discharges to the facility are authorized pursuant to a permit issued in 1985 by the Gloversville–Johnstown Joint Sewer Board ("Joint Sewer Board"), which operates the facility. The permit sets forth precise limitations on the con-

tents of Pan American's discharges. *See* Pl. Rule 10(j) Statement (2/10/92) at ¶ 1.

Plaintiffs Atlantic States Legal Foundation ("Atlantic States") and Rainbow Alliance for a Clean Environment ("Rainbow") are not-for-profit corporations dedicated to protecting and improving the environment. Members of Rainbow live in Johnstown and Gloversville, and thus pay taxes and fees for operation of the sewage plant. Rainbow is itself a corporate member of Atlantic States; therefore, members of Rainbow are also members of Atlantic States. Plaintiffs proclaim that many of their members are affected by the facility's impact on their recreational, aesthetic, environmental, and economic interests. Two members of Rainbow, Robert Galinsky and William Dievendorf, allege that they regularly participate in recreation activities on the shores of Cayudetta Creek and are often offended by the creek's foul odor and unseemly color. Mr. Galinsky also owns a home near the sewage plant and alleges that his property value, as well as his enjoyment of his home, has diminished as a result of the stench emanating from the plant.

Although their complaint centers on the stench emanating from the facility, plaintiffs place responsibility on Pan American for the hardship they have suffered. According to plaintiffs, Pan American's discharges into the facility exceed the highest permissible levels of toxicity established by both the permit and federal regulations,[1] thereby saturating the facility with pollutants it is not equipped to handle. As a result of Pan American's violations, some pollutants escape treatment and are discharged into the Cayudetta Creek. Moreover, the contaminants that the facility successfully removes from the wastewater are concentrated in sludge which accumulates in the facility. The excess pollutants in the sludge further contribute to the odor prob-

lem. Plaintiffs assert that Mr. Galinsky and a third Rainbow member, James Abbott, own homes in Johnstown or Gloversville and have been forced to pay higher sewer use fees to fund plant improvements necessitated by Pan American's illegal discharges.

## B. Procedural History

Pan American is no stranger to charges of environmental contamination. In August, 1989, the Joint Sewer Board issued two appearance tickets alleging that Pan American illegally discharged chromium and lead into the facility, violating the Gloversville City Code. Pan American plead guilty to the charges in Gloversville City Court and paid a $700.00 fine. During the next twelve months, the Joint Sewer Board issued three more appearance tickets to Pan American, all citing additional chromium discharges. On December 27, 1990, Pan American entered an Order of Consent with the Joint Sewer Board relating to those three appearance tickets. The order imposed an additional $4,100.00 fine and required Pan American to maintain an aggressive timetable for upgrading its internal wastewater treatment system. *See* Rioux Aff. (2/7/92) exh. "C".[2] The order also imposed stipulated penalties for any future violations that might occur during the upgrade.

Pursuant to the Order of Consent, Pan American completed the upgrade of its treatment system by March 15, 1991, but not without incident. In the process of completing the upgrade Pan American incurred $2,500.00 in additional penalties for illegal discharges. According to Pan American, however, since the completion of its treatment system upgrade, only a small number of isolated permit violations have occurred. Pan American plant manager James Rioux insists that all of the post-upgrade violations were caused by mechan-

---

**1.** *See especially* Leather Tanning and Finishing Point Source Category, 40 C.F.R. pt. 425 (1991) (providing effluent standards of limitations for the leather tanning industry).

**2.** According to Pan American, the system upgrade was already underway when these en-

forcement actions began. In other words, the order did not call for implementation of a new treatment system, but rather mandated an aggressive schedule for continuing the on-going upgrade. Def. Mem. (2/11/92) at 4–6.

ical malfunctions or other lapses that have been completely remedied. Rioux Aff. at ¶¶ 20–23 (see discussion *infra* p. 233). The other lapses leading to post-upgrade discharges were caused by either the presence of old sludge in the clarifier tanks, the use of chlorine to wash floors in the dye room, or both. At any rate, Pan American attests that these errors have been corrected.

Six months after the Joint Sewer Board executed the Consent Order with Pan American, plaintiffs served a statutory notice of intent to sue pursuant to the Clean Water Act, 33 U.S.C. § 1365. Plaintiffs subsequently commenced this suit in August, 1990, alleging that since June 15, 1985, Pan American discharged industrial wastewater into the sewage plant in violation of § 505(a) of the Clean Water Act, 33 U.S.C. § 1365(a), and in violation of N.Y. Envtl.Conserv.L. § 17–0825 (McKinney 1984). According to plaintiffs, Pan American's discharges are actionable under the Clean Water Act because they violated the standards set forth in the Joint Sewer Board permit and in federal regulations governing pretreatment discharges, 40 C.F.R. § 425 (1990). In all, plaintiff cites 173 discharges which it believes violated the permit and/or regulatory effluent standards of limitation.

Pan American acknowledges culpability for 57 of its discharges but denies liability for the remaining 116 discharges. Of the remaining 116 discharges, Pan American argues that it did not violate effluent standards of limitation in 51 instances and that various affirmative defenses exonerate it from liability in 65 instances.

## II. DISCUSSION

Plaintiffs move for partial summary judgment as to Pan American's liability for those 57 discharges for which Pan American acknowledges culpability and for those 65 discharges for which Pan American asserts an affirmative defense. In opposi-

tion, Pan American argues that plaintiffs cannot prevail on any of their claims as a matter of law because their action is moot. In fact, the purported mootness of plaintiffs' claims forms the principal basis for Pan American's cross-motion for summary judgment. Pan American alternatively argues for summary judgment on grounds that plaintiffs lack standing and/or that plaintiffs have failed to join the Joint Sewer Board as a necessary defendant to this action.

Although the parties' posturing in these motions may be a source of some confusion, at the heart of this matter is the constitutional doctrine of mootness.[3] Pan American relies heavily on the mootness doctrine both in opposition to plaintiffs' summary judgment motion and in support of its own cross-motion for summary judgment. This is significant because, as discussed below, plaintiffs cannot maintain a suit that is moot. *See, e.g. Honig v. Doe,* 484 U.S. 305, 317–18, 108 S.Ct. 592, 600–01, 98 L.Ed.2d 686 (1988) (citations omitted); *R.C. Bigelow, Inc. v. Unilever N.V.,* 867 F.2d 102, 105–06 (2d Cir.1989). If the court accepts Pan American's cross-motion on grounds that plaintiffs' suit has become moot, then all other arguments become surplus and Pan American is entitled to summary judgment. Therefore, as a preliminary matter, the court will review Pan American's argument that plaintiffs' action is moot.

### A. *Mootness*

The alleged mootness of plaintiffs' case is not apparent from the face of the complaint. Therefore, Pan American presses its mootness argument through this motion for summary judgment. On a motion for summary judgment, the burden initially rests with the moving party to show that there exists no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed.R.Civ.P.

---

**3.** The mootness doctrine stems from the "case or controversy" requirement of article III of the Constitution. *See, e.g., Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 240–41, 57 S.Ct. 461, 463–64, 81 L.Ed. 617 (1937). If a case is moot, then "there is no subject matter jurisdiction on which the judgment of the court's order can operate." *Ex parte Baez,* 177 U.S. 378, 390, 20 S.Ct. 673, 677, 44 L.Ed. 813 (1900).

56(c). To accomplish this, Pan American must establish the absence of any evidence to support plaintiffs' assertion that their case remains viable. *Brady v. Town of Colchester,* 863 F.2d 205, 211 (2d Cir.1988); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Once Pan American has satisfied this preliminary step, the burden shifts to plaintiffs to present some evidence which creates a factual dispute as to the mootness of their claim. *See Matsushita Electr. Indus. Co. v. Zenith Radio Co.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986); *Thompson v. Gjivoje,* 896 F.2d 716, 720 (2d Cir.1990). In other words, plaintiffs must present some evidence which could refute defendant's contention that this action is moot. *See, e.g., Binder v. Long Island Lighting Co.,* 933 F.2d 187, 191 (2d Cir.1991); *National Union Fire Ins. Co. v. Turtur,* 892 F.2d 199, 203 (2d Cir.1989); *Orezzoli v. City of Oneonta,* No. 90–CV–755, 1992 WL 44364, 1992 U.S. Dist. LEXIS 2373 (N.D.N.Y. Feb. 29, 1992) (Munson, J.).

Pan American purports to satisfy its initial burden through the affidavit of plant manager Rioux. In his affidavit, Rioux avers that since completing the upgrades to its treatment system in March, 1991, Pan American has experienced only nine violations of permit limits and that the source of each violation has been corrected. Specifically, Rioux reports that four post-upgrade incidents of excessive discharge of hexavalent chromium resulted from either old sludge remaining in clarifier tanks or by the use of chlorine to clean the dye room floor. Rioux Aff. ¶ 23. The sludge was promptly removed from the clarifier tanks and the use of chlorine to wash the floor was discontinued; no further incidents of excess chromium discharge were reported. *Id.* The five other permit violations were due to mechanical failures in the new system, the latest of which occurred on November 21, 1991. *Id.* ¶¶ 20–21. Pan American paid the penalty stipulated in the Joint Sewer Board's Consent Order for one of the excessive discharges. *Id.* ¶ 20. Rioux professes that the source of these malfunc-

tions has been located and corrected. *Id.* exh. "D".

Pan American contends that as a result of its quick remedial work, it is absolutely clear that any allegedly wrongful behavior cannot be reasonably expected to recur. If Pan American is correct, then plaintiffs' suit is moot and must be dismissed. Dismissal would be compelled for the reasons set forth by the Supreme Court in *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Foundation, Inc.,* 484 U.S. 49, 108 S.Ct. 376, 98 L.Ed.2d 306 (1987) (*"Gwaltney"*).

In *Gwaltney,* as in the present case, two not-for-profit corporations brought a citizen's suit pursuant to § 505 of the Clean Water Act, alleging that the defendant had violated the effluent limitations of a state-issued permit for wastewater discharge. 484 U.S. at 54, 108 S.Ct. at 379. The defendant moved to dismiss the suit for want of subject-matter jurisdiction on grounds that the Act allows for a private cause of action only against persons who are "alleged *to be* in violation" of the Act. *See* § 505(a), 33 U.S.C. § 1365(a) (emphasis added), *cited in Gwaltney,* 484 U.S. at 54, 108 S.Ct. at 380. The defendant argued that since its last alleged violation of the effluent limitations occurred several weeks before the plaintiffs commenced their suit, the action did not satisfy the jurisdictional prerequisite that the violation be occurring at the time the complaint was filed. *Id.* at 55, 108 S.Ct. at 380 (citing *Hamker v. Diamond Shamrock Chem. Co.,* 756 F.2d 392 (1985)).

The Court adopted the defendant's argument, holding that "[t]he most natural reading of 'to be in violation' is a requirement that citizen-plaintiffs allege a state of either continuous or intermittent violations—that is, a reasonable likelihood that a past polluter will continue to pollute in the future." *Gwaltney,* 484 U.S. at 57, 108 S.Ct. at 381. Accordingly, federal courts do not have jurisdiction over § 505 actions alleging only past violations of effluent standards of limitation. In other words, a private cause of action does not exist under the Act to recover for wholly past violations of effluent standards of lim-

itation. *See generally id.*[4] Since the Court of Appeals in *Gwaltney* had erroneously held that the plaintiffs could maintain a private suit based wholly on past violations of the Act, the Supreme Court vacated that holding and remanded the case for consideration of whether the plaintiffs' complaint nevertheless contained a good-faith allegation of ongoing violations. *Id.* at 67, 108 S.Ct. at 386.

Plaintiffs argue that the present case is distinguishable from *Gwaltney* because at least nine of Pan American's violations occurred *after* plaintiffs commenced this action and thus were not wholly past violations. *Cf. Gwaltney,* 484 U.S. at 55, 108 S.Ct. at 380 (noting that the "last recorded violation occurred several weeks before respondents filed their complaint"). Indeed, the Court in *Gwaltney* referred extensively to the complaint filing date as the measuring point for determining whether a case is viable under the Act. *See generally id.* Since violations here occurred even after the complaint was filed, plaintiff urges that *Gwaltney* does not provide a basis for dismissing this case.

In pressing this argument, plaintiffs seemingly confuse the doctrines of jurisdiction and mootness. The defendant in *Gwaltney* moved to dismiss the complaint for want of subject matter jurisdiction, whereas Pan American's summary judgment motion is based upon the mootness doctrine. The discussion in *Gwaltney* focused primarily on subject matter jurisdiction. Still, the Court in *Gwaltney* also discussed mootness in a context identical to the current case, *i.e.* when allegations in the complaint of ongoing violations become false due to the defendant's post-complaint remedial measures. The Court stated:

> Longstanding principles of mootness ... prevent the maintenance of suit when " 'there is no reasonable expectation that the wrong will be repeated.' " In seeking to have a case dismissed as moot, however, the defendant's burden "is a heavy one." The defendant must demonstrate that it is *"absolutely clear"* that the allegedly wrongful behavior could not reasonably be expected to recur." Mootness doctrine thus protects defendants from the maintenance of suit under the Clean Water Act based solely on violations wholly unconnected to any present or future wrongdoing, while it also protects plaintiffs from defendants who seek to evade sanction by predictable "protestations of repentance and reform."

*Id.* at 66–67, 108 S.Ct. at 386 (emphasis in original) (citations and footnote omitted). This *dicta* is critical to the present case because it provides the standard by which the court must review Pan American's mootness argument. In light of *Gwaltney,* Pan American will prevail on its mootness argument only if it can "demonstrate that it is *'absolutely clear'* that the allegedly wrongful behavior could not reasonably be expected to recur.' " *Id.* at 66, 108 S.Ct. at 386 (emphasis in original) (quoting *United States v. Phosphate Export Assn., Inc.,* 393 U.S. 199, 203, 89 S.Ct. 361, 364, 21 L.Ed.2d 344 (1968)).

As discussed above, Pan American has seemingly established that its allegedly wrongful behavior here—the violations of the effluent standards of limitation set forth in the permit and federal regulations—cannot reasonably be expected to recur. Pan American has upgraded its wastewater treatment facility pursuant to the Consent Order and has located and remedied the source of all post-upgrade violations. Based upon this evidence, which plaintiffs have in no manner disputed, future illegal discharges cannot reasonably be expected. The burden therefore shifts to plaintiffs to present some evidence to refute Pan American's assertion that this case is moot. *See, e.g., Binder,* 933 F.2d at 191; *National Union Fire Ins. Co.,* 892 F.2d at 203. Plaintiffs can satisfy their burden by showing some factual dispute as to whether Pan American's ef-

---

**4.** There need not be actual proof of continuing violations at the time the complaint is filed, however. Rather, the court held that "§ 505 confers jurisdiction over citizen suits when the citizen-plaintiffs make a good-faith allegation of continuous or intermittent violation...." *Gwaltney,* 484 U.S. at 64, 108 S.Ct. at 385.

fluent violations reasonably can be expected to recur. *See Gwaltney,* 484 U.S. at 66, 108 S.Ct. at 386.

Plaintiffs have not satisfied this burden. Plaintiffs' failure stems from the fact that they have presented no evidence to suggest a reasonable expectation that Pan American's violations of the permit or federal standards will recur. In opposing Pan American's motion, plaintiffs erroneously concentrate on their good-faith belief that Pan American was continuing to violate the discharge permit and federal standards *as of the date the complaint was filed. See* Pl. Mem. (3/2/92) at 6–11. Plaintiffs' aggressive pursuit of this argument totally misses the point of Pan American's motion. As previously mentioned, there is no doubt that Pan American's discharges continued beyond the date the complaint was filed, and that this court therefore has jurisdiction over plaintiffs' claims. The current motion, however, does not raise questions of jurisdiction. Rather, it raises questions of mootness.[5]

Regardless of whether plaintiffs stated a proper claim under § 505 so as to invoke this court's jurisdiction, the issue now before the court is whether plaintiffs' suit has become moot since the time the complaint was filed. Pan American's mootness challenge presents an inquiry wholly distinct from the question of jurisdiction. Mootness—unlike jurisdiction, which is ordinarily measured from the face of plaintiffs' complaint—depends upon whether Pan American can demonstrate *at this point in the litigation* that it has become absolutely clear that its discharges cannot reasonably be expected to recur. *See Gwaltney,* 484 U.S. at 66, 108 S.Ct. at 386. For all of the reasons discussed above, Pan American has presented convincing evidence that its violations cannot be expected to recur and plaintiffs have completely failed to contradict that evidence. Plaintiffs' failure to present any evidence suggesting a reasonable expectation of recurrence indicates that there exists no factual

dispute on this point. *Cf. Hudson River Fishermen's Ass'n v. County of Westchester,* 686 F.Supp. 1044, 1051 (S.D.N.Y.1988) (plaintiff defeated a mootness claim by presenting some evidence to suggest a reasonable expectation that defendant's violations of effluent standards of limitation would continue). Since there is no factual dispute as to the mootness of plaintiffs' claims, Pan American is entitled to summary judgment as a matter of law.

This conclusion comports with the Second Circuit's holding in *Atlantic States Legal Foundation, Inc. v. Eastman Kodak Co.,* 933 F.2d 124 (2d Cir.1991) ("*Eastman Kodak* "). In *Eastman Kodak,* as in the present case, plaintiff Atlantic States commenced a citizen suit under § 505 of the Clean Water Act alleging that defendant's wastewater discharges violated the effluent standards of limitation. 933 F.2d at 125. Atlantic States sought to recover, *inter alia,* injunctive relief and civil penalties. *Id.* at 126. After Atlantic States filed its suit, defendant Eastman Kodak and the State of New York entered into a civil consent order concerning remediation for the contaminated discharges. Eastman Kodak also entered a criminal plea agreement relating to the same discharges, under which it agreed to pay additional remedial penalties. Between the two consent agreements, Eastman Kodak paid more than $2 million in penalties, in exchange for which the state released it from further liability relating to the discharges. *Id.* at 126.

Eastman Kodak subsequently moved for summary judgment of Atlantic States's suit on grounds of mootness. Relying entirely upon *Gwaltney* and the prospective nature of the Clean Water Act's citizens suit provision, the Court held that Atlantic States's suit would be moot—and summary judgment warranted—if Eastman Kodak's settlements with the state "caused the violations alleged by Atlantic States to cease and eliminated any realistic prospect of

---

**5.** Plaintiffs' confusion is understandable. At least one district court has apparently failed to draw the distinction between challenges to subject matter jurisdiction versus challenges to

mootness. *See Natural Res. Defense Council v. Loewengart & Co.,* 776 F.Supp. 996, 1000 (M.D.Pa.1991).

their recurrence." *Eastman Kodak*, 933 F.2d at 128. The Second Circuit remanded to the district court for consideration of whether there was a "realistic prospect" that Eastman Kodak would continue to violate the Clean Water Act as alleged in the complaint, and instructed that the action be dismissed as moot if no such prospect exists. *Id.* at 128.

The instant case presents a scenario which from a strictly legal standpoint is indistinguishable from *Eastman Kodak*. Pan American's mootness argument raises the issue of whether there is a reasonable expectation that its discharges will continue. Having reviewed this argument as well as plaintiffs' opposition (or lack thereof), the court finds that plaintiffs have presented no evidence to indicate a "realistic prospect of continuing violations." *Cf. Eastman Kodak*, 933 F.2d at 128; *see also Gwaltney*, 484 U.S. at 66, 108 S.Ct. at 386 ("absolutely clear that the allegedly wrongful behavior [cannot] reasonably be expected to recur") (emphasis and citation omitted). Accordingly, plaintiffs' action has become moot and Pan American is entitled to judgment as a matter of law.

Finally, at oral argument plaintiffs cited for the first time the Eleventh Circuit's decision in *Atlantic States Legal Foundation, Inc. v. Tyson Foods, Inc.*, 897 F.2d 1128 (11th Cir.1990) to argue that even if this case is moot with respect to its claim for injunctive relief, it remains viable as to their claim to recover civil penalties for discharges that occurred after the complaint was filed. The court in *Tyson Foods* held that the *Gwaltney* mootness standard applies only to claims for injunctive relief and does not affect claims to recover damages for justiciable violations. 897 F.2d at 1134–35. In fact, this court utilized the same rationale in *Friends of the Earth v. Archer Daniels Midland Co.*, No. 84–CV–413, *cited in Friends of the Earth*, 780 F.Supp. 95, 97 (N.D.N.Y.1992), to hold that

*Gwaltney* mootness does not affect claims for civil penalties.

Any doubt as to whether the *Gwaltney* mootness standard applies with equal force in this circuit to claims for civil penalties was laid to rest in the 1991 *Eastman Kodak* decision. There, the Second Circuit gave specific instructions that the *entire* suit—which includes claims for injunctive relief as well as "civil damages in the maximum statutory amount"—should be dismissed on remand if there is no realistic prospect that Kodak will continue to violate the Act. *See Eastman Kodak*, 933 F.2d at 128. The Second Circuit drew no distinction between mootness of claims for injunctive relief versus claims for monetary relief: all claims would be moot. *See id.* In sum, the *Tyson Foods/Friends of the Earth* distinction between injunctive and monetary relief was effectively rejected by the Second Circuit in *Eastman Kodak*, a holding to which this court is bound.[6]

### B. Remaining arguments and motions

The fact that this case has become moot deprives this court of jurisdiction over plaintiffs' claims and requires summary judgment of plaintiffs' complaint. *See, e.g., R.C. Bigelow, Inc.*, 867 F.2d at 105. Therefore, the court need not address defendant's alternative arguments for summary judgment. Indeed, without jurisdiction, the court is not empowered to consider plaintiffs' motion for summary judgment. *Allen v. Wright*, 468 U.S. 737, 750, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984); *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.* 454 U.S. 464, 471–73, 102 S.Ct. 752, 757–59, 70 L.Ed.2d 700 (1982).

### III. CONCLUSION

Defendant has presented evidence indicating that it is absolutely clear that its allegedly wrongful behavior could not reasonably be expected to recur, and plaintiffs have offered no evidence to rebut defen-

---

6. In fact, the Court in *Gwaltney* also spoke of dismissing an entire suit on mootness grounds without drawing a distinction between injunctive and monetary relief. *See, e.g., Gwaltney*, 484 U.S. at 66–67, 108 S.Ct. at 386 ("Mootness doctrine thus protects defendants from maintenance of suit under the Clean Water Act based solely on violations wholly unconnected to any present or future wrongdoing ...").

dant's proof. Defendant has therefore demonstrated that plaintiffs' suit is moot. Accordingly, defendants' motion for summary judgment is granted.

IT IS SO ORDERED.