# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
August 7, 2025

Lyle W. Cayce
Clerk

No. 24-40717

Save the Cutoff,

*Plaintiff—Appellant*,

*versus*

Iron River Ranch II, L.L.C.; IronHorse Unlimited,
Incorporated,

*Defendants—Appellees*.

---

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 6:23-CV-142

---

Before Elrod, *Chief Judge*, and Duncan and Engelhardt, *Circuit Judges*.

Per Curiam:[*]

Save the Cutoff ("STC"), a non-profit organization, brought a Clean Water Act citizen suit against Defendants, alleging they illegally placed fill in a Texas creek. After the district court dismissed for lack of jurisdiction, STC

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

moved to vacate the judgment and for leave to amend its original compliant, which the district court denied. We AFFIRM.

I

STC is a "membership non-profit organization whose purposes include protection of the environmental quality and integrity of the Cutoff and other nearby waters in Henderson and Navarro Counties." Defendants are Iron River Ranch II, a company that owns property adjacent to Cedar Creek (a tributary of the Trinity River in East Texas), and Ironhorse, a construction company that worked on the property.

STC claims Defendants violated 33 U.S.C. § 1311(a) of the Clean Water Act, 33 U.S.C. § 1251, *et seq.*, which bans "the discharge of any pollutant by any person" except in compliance with the statute. Allegedly without proper permits, Defendants placed fill in Cedar Creek in February 2022 which "remains present in the Creek," causing "sediment [to] continue[ ] to be discharged into" the Creek when it rains. After providing required notices, *see* 33 U.S.C. § 1365(b), STC brought this suit under the Clean Water Act. *See* 33 U.S.C. § 1365(a).

The district court granted Defendants' motion to dismiss for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1). The court reasoned that the Act does not confer jurisdiction for "wholly past violations" and it discerned no allegation of "continuous or intermittent violation[s]" by Defendants. *See Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 64 (1987).

Following entry of final judgment, STC moved to vacate and for leave to amend its original complaint. Specifically, it sought to clarify one of its claims. While STC's original complaint focused on Defendants' failure to obtain a § 404 permit for the discharge of fill material, its proposed amended complaint detailed why Defendants should have also obtained a § 402 permit

No. 24-40717

for the discharge of pollutants. *See* 33 U.S.C. §§ 1342, 1344. The district court denied the motion, reasoning that no "unusual or unique circumstances" justified vacatur and that amendment would be futile because the jurisdictional defect in STC's allegations would remain.

STC now appeals both the final judgment dismissing its case and the order denying its subsequent motion to vacate and amend.

## II

We review the dismissal for lack of subject matter jurisdiction *de novo*. *Griener v. United States*, 900 F.3d 700, 703 (5th Cir. 2018). We review the denial of the motion to vacate and amend for abuse of discretion. *Hall v. Louisiana*, 884 F.3d 546, 549 (5th Cir. 2018); *Benson v. St. Joseph Reg'l Health Ctr.*, 575 F.3d 542, 550 (5th Cir. 2009).

## III

### A

The district court did not err in dismissing STC's case for lack of jurisdiction. The Clean Water Act confers jurisdiction over suits against persons "alleged to be in violation of" an effluent standard. 33 U.S.C. § 1365(a)(1). A plaintiff must "allege a state of either continuous or intermittent violation—that is, a reasonable likelihood that a past polluter will continue to pollute in the future." *Gwaltney*, 484 U.S. at 57. "[W]holly past violations," however, do not suffice. *Id*. at 64.

STC argues the district court erred in reading its complaint to allege only past violations. While acknowledging that no new fill has been placed since 2022, STC contends Defendants' "action in leaving this fill in place" is an ongoing violation.

Our decision in *Hamker* says otherwise. *See Hamker v. Diamond Shamrock Chem. Co.*, 756 F.2d 392 (5th Cir. 1985). That case held that

3

"continuing seepage" of previously leaked oil did not constitute an ongoing violation of the Act. *Id.* at 397. The Act prohibits "any addition of any pollutant to navigable waters from any point source." 33 U.S.C. §§ 1311(a); 1362(12); *see id.* at § 1362(14) (defining "point source" as a "discernible, confined and discrete conveyance, including but not limited to any pipe"). *Hamker* concluded that rainfall drainage is not a point source because "[m]ere continuing residual effects resulting from a discharge are not equivalent to a continuing discharge." *Ibid.*

STC's allegations mirror those in *Hamker*. They assert that Defendants' "fill activities" in 2022 resulted in fill which "remains present in the Creek" and that "sediment continues to be discharged into Cedar Creek" when it rains. That ongoing movement of fill corresponds to the continued seepage of oil in *Hamker*. That is, it is a "residual effect" of a previous discharge, not "a continuing discharge from a point source." *Hamker*, 756 F.2d at 397.

STC tries to distinguish *Hamker* in two ways, but neither succeeds.

First, STC argues that the Supreme Court's *Gwaltney* decision is controlling. *Gwaltney* observed that allegations of "intermittent" violations can provide jurisdiction for citizen suits under the Act, something *Hamker* did not acknowledge. *Gwaltney*, 484 U.S. at 57; *cf. Hamker*, 756 F.2d at 395 ("[A] complaint . . . must allege a violation occurring at the time the complaint is filed."). But *Gwaltney* did not overrule *Hamker*'s holding that the Act does not cover citizen suits once discharges from a point source have ceased. *See Matter of Henry*, 944 F.3d 587, 591 (5th Cir. 2019) ("[A] panel of this court can only overrule a prior panel decision if such overruling is unequivocally directed by controlling Supreme Court precedent." (quotation omitted)). To the contrary, *Gwaltney* confirmed that the Act

4

"does not permit citizen suits for wholly past violations." *Gwaltney*, 484 U.S. at 64.

Second, STC points to our decision in *Carr. See Carr v. Alta Verde Indus., Inc.*, 931 F.2d 1055 (5th Cir. 1991). *Carr* cited approvingly this passage from Justice Scalia's *Gwaltney* concurrence:

> The phrase . . . 'to be in violation' . . . suggests a state rather than an act. . . . When a company has violated an effluent standard or limitation, it remains . . . 'in violation' of that standard or limitation so long as it has not put in place remedial measures that clearly eliminate the cause of the violation.

*Id.* at 1062 (citing *Gwaltney*, 484 U.S. at 69 (Scalia, J., concurring)). STC appeals to this reasoning to argue that Defendants' unpermitted actions placed them in a "state of violation."

This argument fails. STC neglects to note that, immediately after the quoted passage, *Carr* explained that one "remains in a continuing state of violation until it *either* obtains a permit *or no longer meets the definition of a point source.*" *Carr*, 931 F.2d at 1063 (emphasis added). STC does not allege that Defendants continue to discharge pollutants *from a point source*. And *Hamker* explains that movement of fill by rainwater within a creek does not meet the definition of a point source. *See Hamker*, 756 F.2d at 397 (holding "natural rainfall drainage over a broad area" is not a point source (quotation omitted)). Thus, neither the Supreme Court's ruling in *Gwaltney* nor ours in *Carr* can save STC's case.

B

We also conclude that the district court did not abuse its discretion by denying STC's motion to vacate and amend. STC sought to amend its complaint after entry of final judgment "to ensure that [its] . . . § 402 allegations were independently presented." Because "post-judgment

amendment is permissible only when the judgment is vacated," it also moved for vacatur. *Benson*, 575 F.3d at 550.

A court may vacate a final judgment under certain circumstances, including "mistake, inadvertence, surprise, or excusable neglect." FED. R. CIV. P. 60(b)(1). "Implicit in the fact that Rule 60(b)(1) affords extraordinary relief is the requirement that the movant make a sufficient showing of unusual or unique circumstances justifying such relief." *Pryor v. U.S. Postal Serv.*, 769 F.2d 281, 286 (5th Cir. 1985); *see also Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 356 (5th Cir. 1993) (listing factors a district court must consider when evaluating a Rule 60 motion).

STC argues that the district court's failure to discuss its § 402 claim merits vacatur. We disagree. STC's § 402 claim relies on the same jurisdictional grant as its §404 claim, which the district court did address. As discussed, to establish jurisdiction over either claim a plaintiff must "allege a state of either continuous or intermittent violation." *Gwaltney*, 484 U.S. at 57; 33 U.S.C. § 1365(a). STC failed to do so. Thus, vacatur was not required, and amendment of STC's complaint would be futile.

Accordingly, the district court did not abuse its discretion in denying STC's motion to vacate and amend.

IV

The district court's judgment is AFFIRMED.