IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 99-50181
_____

EVA VIELMA,

                              Plaintiff-Appellant,

        versus

EUREKA COMPANY,

                              Defendant-Appellee.


_____

Appeal from the United States District Court
for the Western District of Texas
_____

July 20, 2000

Before GARWOOD, WIENER and DENNIS, Circuit Judges.

GARWOOD, Circuit Judge:

        Plaintiff-appellant Eva Vielma (Vielma) brought this action
against her employer, defendant-appellee Eureka Company (Eureka),
alleging Texas law claims of age and disability discrimination.
The district court found that Vielma's state claims were time-
barred because she had not filed suit in state court within sixty
days of receiving her "right to sue" letter from the Equal
Employment Opportunity Commission (EEOC).    Accordingly, the
district court granted summary judgment in favor of Eureka.    The
district court also denied her motions to reconsider and to amend

her complaint to add federal discrimination claims. Vielma now appeals the grant of summary judgment on her state claims, as well as the denial of her motion to amend. We hold that Vielma's state claims were not time-barred, and accordingly reverse the grant of summary judgement regarding those claims and remand them. We affirm, however, the denial of Vielma's motion to amend.

## Facts and Proceedings Below

Vielma had been an employee of Eureka in El Paso, Texas since 1993, first as an assembler and later as a quality control inspector. In 1997, she received medical treatment for work-related injuries. Though her doctor released her to work with certain conditions on the kind of work she could perform, Vielma was unsatisfied with her subsequent job assignments from Eureka. Ultimately, Eureka informed her that it could not return her to work because it was unable to accommodate her medical restrictions. On February 3, 1998, Vielma filed a charge with the EEOC El Paso, Texas, Area Office, alleging that Eureka had discriminated against her on the bases of age and disability. Under the Worksharing Agreement between the EEOC and the Texas Commission on Human Rights (TCHR), the analogous state agency, Vielma's charge was effectively filed with the TCHR on that date as well. *See Griffin v. City of Dallas*, 26 F.3d 610, 612-13 (5th Cir. 1994) ("[U]pon the EEOC's receipt of the complaint, the TCHR, for all legal and practical purposes, [also] received the complaint."). The EEOC dismissed her

2

charge and on May 4, 1998, Vielma received from the EEOC El Paso Area Office a Dismissal and Notice of Rights, commonly known as a "right to sue" letter.  This form letter provided in relevant part:

"Your lawsuit must be filed <u>WITHIN 90 DAYS</u> of your receipt of this Notice; otherwise, your right to sue based on this charge will be lost.  (The time limit for filing suit based on a state claim may be different.)"

On August 3, 1998, Vielma filed suit in Texas state court, alleging that Eureka had discriminated against her because of her age and disability in violation of the Texas Commission on Human Rights Act (TCHRA).[1]  Vielma requested and on August 12, 1998 received the TCHR version of a "right to sue" letter, titled "Notice of Right to File a Civil Action."  Like the EEOC letter, the TCHR letter notified Vielma that her claims had been dismissed and that she had a certain period of time within which to file suit under the TCHRA.  The letter stated in relevant part: "PLEASE BE ADVISED THAT YOU HAVE SIXTY (60) DAYS FROM THE RECEIPT OF THIS NOTICE TO FILE THIS CIVIL ACTION."

On September 3, 1998, Eureka filed its answer and removed the case to federal district court on the basis of diversity jurisdiction.  On September 24, 1998, Eureka filed its motion for

---

[1]  As the district court noted, Vielma filed her state suit on the ninety-first day after the issuance of the EEOC letter, which was presumably within the federal limitations period (*i.e.*, ninety days from her receipt of the letter).

3

summary judgment, alleging that Vielma's claims were time-barred because she had not filed her state suit within sixty days of receiving the EEOC right to sue letter. The district court conducted a hearing on the motion on December 15, 1998, and granted the motion on January 21, 1999 in an order with reasons. The court held that the EEOC right to sue letter constituted notice for purposes of the TCHRA and that the sixty day limitations period for bringing the state claim began when Vielma received the EEOC letter. On the same day the district court entered on a separate document its judgment dismissing the complaint with prejudice.

On January 29, 1999, Vielma filed a motion for reconsideration, arguing that her state claim was not time-barred because receipt of the EEOC letter did not trigger the "right to sue" period under the TCHRA. On the same day, she also filed a motion to amend her earlier complaint, contending that the district court should allow her to include federal age and disability discrimination claims in her complaint. The district court denied these motions on March 23, 1999. Vielma now appeals the district court's grant of summary judgment on her state claims, as well as its denial of her motion to amend.

**Discussion**

I.  Triggering the TCHRA Sixty-Day Period

The primary issue raised by Vielma in this appeal is a relatively narrow one: whether the receipt of an EEOC "right to

4

sue" letter, which starts the ninety-day period within which a complainant may bring a federal discrimination suit, also starts the sixty-day period within which a complainant may file suit under the TCHRA. The district court answered that question affirmatively and Vielma, unsurprisingly, challenges that conclusion. This is a question of first impression and depends in large part on the interpretation of the TCHRA.

This Court reviews the grant of summary judgment *de novo*, applying the same criteria the district court was obliged to apply. *See Norman v. Apache Corp.*, 19 F.3d 1017, 1021 (5th Cir. 1994). In this appeal, there are no facts in dispute and the district court's decision to grant summary judgment in favor of Eureka was based purely on an interpretation of Texas law, which we also review *de novo*. *See Floors Unlimited, Inc. v. Fieldcrest Cannon, Inc.*, 55 F.3d 181, 184 (5th Cir. 1995). When applying state law, "we interpret the state statue the way we believe the state Supreme Court would, based on prior precedent, legislation, and relevant commentary." *See F.D.I.C. v. Shaid*, 142 F.3d 260, 261 (5th Cir. 1998). If a state's highest court has not spoken on the issue, we look to the intermediate appellate courts for guidance. *See Wood v. Armco, Inc.*, 814 F.2d 211, 213 n.5 (5th Cir. 1987).

A. The Relationship Between the EEOC and the TCHR

The TCHRA "establishes a comprehensive administrative review system to carry out the policies embodied in Title VII," as well as

the Americans with Disabilities Act (ADA). *See Schroeder v. Texas Iron Works, Inc.*, 813 S.W.2d 483, 485 (Tex. 1991); *see also* TEX. LABOR CODE ANN. § 21.001(1)-(3) (West 1996). One of the primary goals of the statute is to coordinate state law with federal law in the area of employment discrimination. *See* TEX. LABOR CODE ANN. § 21.001(1)-(2). This dual state-federal system has resulted in similar, though not always identical, procedures for combating employment discrimination, and overlapping, though not always interchangeable, spheres of authority. Under 42 U.S.C. § 2000e-5(c) and 29 U.S.C. § 633(b), if a state has its own anti-discrimination laws and corresponding agency (as Texas does), the EEOC must defer its processing of a discrimination complaint until the state has had at least sixty days to investigate and attempt to resolve the complaint. *See Schroeder*, 813 S.W.2d at 485. Accordingly, the TCHRA created the TCHR as a "deferral agency" so that claims of employment (and now disability) discrimination could be addressed at the state level first. *See id.*

In both the federal and Texas state systems, a complainant must file a complaint with the appropriate agency before filing suit. *See id.* at 487. The complainant must do so within 180 days of the alleged unlawful practice. *See* 42 U.S.C. § 2000e-5(e)(1); TEX. LABOR CODE ANN. § 21.002(a). In 1989, the TCHR and the EEOC entered a Worksharing Agreement, to be amended annually, which was intended to minimize unnecessary duplication of effort and make the

6

operations of the two agencies more efficient. *See Griffin*, 26 F.3d at 612.[2] In the 1998 Worksharing Agreement, "the EEOC and the [TCHR] each designate the other as its agent for the purpose of receiving and drafting charges, including those that are not jurisdictional with the agency that initially receives the charges."[3] 1998 Worksharing Agreement § II(A). In a case like this one, when a complainant files her initial charge with the EEOC, her charge will also be considered filed with the TCHR. *See Griffin*, 26 F.3d at 612-13; *Price v. Philadelphia Am. Life Ins. Co.*, 934 S.W.2d 771, 773 (Tex. App.–Houston [14th Dist.] 1996, no writ).[4]

In the case of a complainant pursuing state claims under the TCHRA, if the TCHR dismisses the complaint or has not resolved it within 180 days, it must notify the complainant in writing. *See* TEX. LABOR CODE ANN. § 21.208. A complainant who receives notice of dismissal may request a written notice of her right to file a civil

---

[2] 42 U.S.C. § 2000e-4(g)(1) empowers the EEOC to enter into these kinds of agreements with state and local agencies.

[3] As Vielma points out, the 1998 Worksharing Agreement was not part of the record. However, it is essentially unchanged from the 1989 Agreement, which this Court cited in *Griffin*: "The [TCHR] by this agreement designates and establishes the EEOC as a limited agent of the [TCHR] for the purpose of receiving charges on behalf of the [TCHR] and EEOC agrees to receive such charges." *Griffin*, 26 F.3d at 612 (quoting Worksharing Agreement § 2(a)).

[4] There is also considerable overlap between the two agencies in processing complaints and sharing investigatory information. Those matters are not relevant to this appeal.

action.  *See id.* § 21.252.  Once the complainant receives notice of her right to file a civil action, she must do so within sixty days.  *See id.* § 21.254.  The complainant does not have to wait for this letter before filing suit, however.  *See id.* § 21.252(d) ("Failure to issue the notice of the complainant's right to file a civil action does not affect the complainant's right under this subchapter to bring a civil action against the respondent."); *see also Eckerdt v. Frostex Foods, Inc.*, 802 S.W.2d 70, 71 (Tex. App.–Austin 1990, no writ).  Whether she receives a letter or not, the complainant must institute her state suit within two years of filing the administrative complaint.  *See id.* § 21.256.

The federal system is similar, but not identical.  As noted above, a complainant alleging violations of federal law must file the complaint within 180 days of the conduct at issue.  The EEOC will launch its own investigation, and if it decides to dismiss the complaint, it will notify the complainant of this dismissal *and* her "right to sue."  42 U.S.C. § 2000e-5(f)(1).[5]  As the district court noted, the principal differences between the two systems are that in the federal system mailing the "right to sue" letter is

---

[5]  This section provides that if the charge is dismissed or not resolved in 180 days, "the Commission . . . shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge."  In the federal system, this information appears all in one letter, unlike the Texas process, which evidently contemplates the mandatory notice of dismissal and then the mailing of the "right to sue" letter only upon request.

mandatory and that receipt of the right to sue letter is generally necessary before filing federal suit. *See id.; see also Carter v. South Cent. Bell*, 912 F.2d 832, 841 (5th Cir. 1990) (noting that the right to sue letter is usually a condition precedent, though not a jurisdictional prerequisite, to bringing a federal employment discrimination cause of action). Most relevant to our inquiry, the federal complainant must file suit within ninety days of receipt of the right to sue letter, as opposed to sixty days under the TCHRA.

In the present case, the district court granted summary judgment in favor of Eureka because it concluded that Vielma's claims under the TCHRA were time-barred. Specifically, the district court found that she had not complied with section 21.254, which provides that "[w]ithin 60 days after the date a notice of the right to file a civil action is received, the complainant may bring a civil action against the respondent." The district court found that in light of the Worksharing Agreement and two unpublished opinions from the Northern District of Texas, the reference to "a notice" in section 21.254 encompassed not only the notice of a right to file a civil action specified in section 21.252, but also a "right to sue" letter issued by the EEOC. On appeal, Vielma contends that section 21.254 refers only to a "right to file a civil action" letter from the TCHR; under her interpretation, she would not be time-barred because she filed her state suit *before* receiving her TCHR letter. Eureka, naturally

9

enough, agrees with the district court's more expansive interpretation.

The EEOC acted as the TCHR's "agent" at least for the purpose of receiving and processing Vielma's original complaint. The relevant inquiry, then, is defining the *scope* of the EEOC's agency for the TCHR in this context, that is, whether in addition to receiving and processing complaints for the TCHR, the EEOC can also notify a complainant of her "right to file a civil action" under state law by issuing her a federal "right to sue" letter. We conclude that it cannot.

At the outset, we note that while the coordinated efforts of the EEEOC and state agencies are complicated and sometimes overlapping, the Supreme Court has observed that the limitations periods for federal and state anti-discrimination claims are independent. *See E.E.O.C. v. Commercial Office Prods. Co.*, 108 S.Ct. 1666, 1675-76 (1988) (concluding that in light of Title VII's broad remedial purpose, untimely filing under state law did not preclude application of extended federal filing period for certain categories of cases); *Oscar Mayer & Co. v. Evans*, 99 S.Ct. 2066, 2073 (1979) (finding that complainant's failure to file age discrimination claim within a state limitations period did not automatically render his federal claim untimely). In *Commercial Office Products*, the Court found that "state time limits for filing discrimination claims do not determine the applicable federal time

10

limit." *Id.* at 1675. It also noted that in the absence of any "express reference to timeliness under state law," the federal statutes should not "import[] such a hurdle" into "a remedial scheme in which laypersons, rather than lawyers, are expected to initiate the process." *Id.* at 1675-76 (citing *Oscar Mayer*, 99 S.Ct. at 2073-74); *see also Laquaglia v. Rio Hotel & Casino, Inc.*, 186 F.3d 1172, 1177 (9th Cir. 1999) (finding procedural requirement that untimely state filing and forwarding of complaint to EEOC time-bars federal claim to be "entirely at odds with the purpose of the worksharing agreement and with Title VII"). These policy observations are equally applicable to the TCHRA: importing extra procedural hurdles from the federal system into the TCHRA would contravene the purpose of the statute and the Worksharing Agreement. The agreements are in place to benefit not only the agencies but also the complainants, who do not have to file their complaints twice. In light of these considerations, and in the absence of any clear statutory command to the contrary, we cannot agree with the district court that an EEOC "right to sue" letter is interchangeable with a TCHR "right to file a civil action" letter and thus capable of triggering the TCHRA's sixty-day filing period.

B. Language and Construction of the TCHRA

We find support for this conclusion not only in the Supreme Court's guidance, but also in the TCHRA itself. Section 21.254 of the Texas Labor Code (the relevant provision of the TCHRA) is

undeniably somewhat ambiguous; indeed, its ambiguity forms the basis of this dispute. Section 21.254 provides that "[w]ithin 60 days after the date a notice of the right to file a civil action is received, the complainant may bring a civil action against the respondent." As the district court rightly observed, this section does not specify *which* "notice" will trigger the sixty-day period; it lacks a clear modifier, such as "notice from the commission." There are, however, several factors that militate strongly in favor of construing section 21.254 to refer only to a "right to file a civil action" letter issued by the TCHR.

First, the language of the statute supports this reading. When the terms of a statute are ambiguous, we will employ cannons of statutory construction to discern the legislature's intent. *See Estate of Padilla v. Charter Oaks Fire Ins. Co.*, 843 S.W.2d 196, 198 (Tex. App.–Dallas 1992, writ denied). Section 21.254 refers not merely to "a notice," but to "a notice of the right to file a civil action." Section 21.252 employs the same term: it provides that a complainant who receives notice that her complaint has not been either dismissed or resolved "is entitled to request from the commission a written notice of the complainant's right to file a civil action." In the absence of some indication to the contrary, we interpret words or phrases that appear repeatedly in a statute to have the same meaning. *See Boriack v. Boriack*, 541 S.W.2d 237, 240 (Tex. App.–Corpus Christi 1976, writ dism'd) ("When a word or

12

a phrase is used in different parts of a statute, a clear meaning appearing in one instance will be attached to it elsewhere."). There is no indication that the legislature intended section 21.254 to refer to anything other than the TCHR "right to file a civil action" letter, and this Court thus should give the language in section 21.254 the same meaning as the identical language in section 21.252: that "a notice of right to file a civil action" signifies the TCHR "right to file a civil action" letter only. The presence of the indefinite article "a," which the district relied upon to support its reading of section 21.254, gives way to this narrower reading in light of the statute's repeated use of the particular phrase "right to file a civil action." This interpretation thereby gives meaning to all the words in the statute, while still retaining the same meaning for the recurring term. *See Padilla*, 843 S.W.2d at 198 ("We give full effect to all the statute's language and not just one word or phrase.").

Second, we note in passing that this term also appears as the heading of the TCHR right to file a civil action letter, "Notice of Right to File a Civil Action." Moreover, the letter itself states that it was issued pursuant to *both* sections 21.252 and 21.254. Though the letter is not part of the statute, its use of the same language that appears in sections 21.254 and 21.254 marginally lends further credence to the interpretation that section 21.254's reference to "a notice" in fact means "a" letter from the TCHR.

13

Third, and more importantly, the earlier version of the TCHRA stated unambiguously that only the letter from the TCHRA would start the sixty-day filing period. Before the recodification of the Texas statutes began, section 7.01(a) of the TCHRA provided in relevant part:

> "If the complaint filed with the commission pursuant to [the TCHRA] is dismissed by the commission, or if within 180 days after the date of filing of the complaint the commission has not filed a civil action under this section or has not successfully negotiated a conciliation agreement between the complainant and respondent, the commission shall so notify the complainant in writing by certified mail. *Within 60 days after the date of receipt of the notice, a civil action may be brought by the complainant against the respondent named in the charge . . . ."* VERNON'S ANN.CIV.STAT. art. 5221k, § 7.01(a) (Vernon 1983) (emphasis added).

In that version of the statute, "the notice" clearly referred to the letter from the TCHR; there was no need to repeat that point (that is, to insert "from the commission" after "the notice"). Two cases interpreting the TCHRA before recodification reached the same conclusion. In *Schroeder*, the Texas Supreme Court discussed the TCHR notification letter and stated that "[a]fter receipt of *this notice*, the complainant has 60 days in which to bring a civil action against the respondent." *See* 813 S.W.2d at 486 (emphasis added). The Court of Appeals in *Eckerdt* also considered the TCHR letter to be the lone trigger for the 60 day filing period: "[t]he language of this section states simply that a complainant may bring suit within 60 days of receiving notice from the commission." 802 S.W.2d at 71.

14

The only changes to the TCHRA since the legislature recodified it in the Texas Labor Code are that the notice of dismissal and the "right to file a civil action" letter are now two separate pieces of correspondence and that in section 21.254 "the" has been changed to "a." The first difference is of no relevance to the triggering of the sixty-day period, and the second, as noted above, does not evince an intent to broaden the category of notice to include receipts of federal "right to sue" letters as mechanisms that start that period. "[W]hen the wording and the language in the recodification is substantially the same and the functions of the [topic at issue] are identical to that of the former article . . . , it should be held that they convey the same intent and meaning." *Deep E. Texas Reg'l Health and Mental Retardation Servs. v. Kinnear*, 877 S.W.2d 550, 562 (Tex. App.–Beaumont 1994, no writ). In this case, the recodified TCHRA retains language that has been varied only slightly and the functions of the TCHRA letter and the triggering period are the same. Accordingly, we find that the interpretations by *Schroeder* and *Eckerdt* of the TCHRA remain sound.

Finally, the two unreported decisions relied on by the district court do not persuade us to the contrary. In *Dean v. Xerox Corp.*, 1997 WL 756574 (N.D. Tex. Nov. 25, 1997), the district court held that the plaintiff's TCHRA claim was time-barred under section 21.254 because he did not file suit within sixty days of receipt of the EEOC letter. *Dean*'s analysis of this issue is

15

fairly cursory, however: the district court merely recites the language of section 21.254, observes that the defendant had received an EEOC letter, and deems that fact sufficient to trigger his "right to sue" period for purposes of the TCHRA. *See id.* at *2. The other case, *Battee v. Eckerd Drugs, Inc.*, 1997 WL 340941 (N.D. Tex. June 12, 1997), is similarly opaque. In *Battee*, the district court dismissed the plaintiff's TCHRA claims because he failed to file suit within sixty days of receipt of the EEOC letter. The entirety of the *Battee* court's analysis amounts to a citation of TCHRA section 21.254 in a footnote for the proposition that claims in this situation are time-barred. *See id.* at *4 n.3. Neither opinion discusses the structure of the TCHRA or the possible complications involved in the relationship between the EEOC and TCHR; they simply assume that the notification letters from the EEOC and the TCHR are interchangeable.

C. Comparison with the Federal System

Our conclusion also finds support in the fact that in the reverse situation, receipt of a TCHR letter would *not* trigger the analogous EEOC ninety-day filing period. "The stated purposes of the Texas act suggest that the state legislature intended it to conform to the policies contained in the federal act; therefore, we may consider how the federal act is implemented under clauses similar to those at issue in the Texas act." *Eckerdt*, 802 S.W.2d at 72; *see also Benavides v. Moore*, 848 S.W.2d 190, 193 (Tex.

16

App.–Corpus Christi 1992, writ denied) ("When Texas case law fails to address questions raised under the [TCHRA], we look to federal case law for guidance.").  As Eureka concedes, 42 U.S.C. § 2000e-5(f)(1) states only that the ninety-day period will be triggered by receipt of a "right to sue" letter from the EEOC.  Receipt of the federal letter appears to be the exclusive mechanism for commencing the federal filing period.  *See Muth v. Cobro Corp.*, 895 F. Supp. 254, 256 (E.D. Mo. 1995) (holding that the ninety-day period for filing federal anti-discrimination action is triggered only by receipt of EEOC "right to sue" letter); *Black v. Brown Univ.*, 555 F.Supp. 880, 884 n.8 (D. R.I. 1983) ("This Court rejects plaintiff's assertion that the right-to-sue letter from the [Rhode Island equal employment agency] is equivalent to the EEOC right-to-sue letter.  The plain language of 42 U.S.C. § 2000e-5(f)(1) requires, as a condition precedent to litigating in federal court, a right to sue letter issued by the EEOC."); *Foreman v. General Motors Corp.*, 473 F. Supp. 166, 177 (E.D. Mich. 1979) (finding that plaintiffs failed to satisfy the prerequisites for a Title VII suit because they only received a "right to sue" letter from the state agency, not the EEOC).

Despite this clear statutory language, Eureka relies on two cases to argue that a TCHR "right to file a civil action" letter also triggers the federal ninety-day filing period.  Neither of these cases is persuasive.  In *Dao v. Auchan Hypermarket*, 96 F.3d

17

787 (5th Cir. 1996) (*per curiam*), this Court observed–in passing *dicta* only–that "[section] 2000e-5(f)(1) provides that a civil action must be commenced 'within ninety days' after the charging party has received a 'right-to-sue' letter from the EEOC *or state or local agency*." *Id.* at 789 (emphasis added). This observation is simply incorrect. First, section 2000e-5(f)(1) refers only to receipt of the EEOC letter as the triggering event. Second, the case *Dao* cites, *Nilsen v. City of Moss Point*, 621 F.2d 117, 120 (5th Cir. 1980), concerned a plaintiff's failure to file her federal suit within ninety days of receipt of her *EEOC* letter. None of the authority cited in *Dao* supports its statement that both federal and state/local "right to sue" letters trigger the federal ninety-day filing period.

Eureka also cites *James v. Texas Department of Human Services*, 818 F.Supp. 987 (N.D. Tex. 1993) for the same proposition. *James* found that a plaintiff's receipt of a TCHR "right to file a civil action" letter would exhaust her administrative remedies under the ADA, that is, the TCHR letter would trigger her federal right to sue. *See id.* at 990. The *James* court simply takes this for granted and only cites *Pinkard v. Pullman-Standard Division of Pullman, Inc.*, 678 F.2d 1211 (5th Cir. 1982) (*per curiam*) for support. *Pinkard*, in turn, merely stands for the unremarkable idea that a Title VII plaintiff must receive an *EEOC* letter before filing suit. *See id.* at 1215. Like *Dao*, *James* has no support for

18

its statement that a TCHR letter can trigger the federal ninety-day filing period, and like *Dean* and *Battee*, is not persuasive.  In sum, neither *Dao* nor *James* demonstrates that a TCHR "right to file a civil action" letter would start the federal ninety-day filing period; based on the plain language of section 2000e-5(f)(1), it is receipt of notice from the EEOC only that will start the period.

D.  Comparison with Other State Systems

In other state systems, it appears that an EEOC "right to sue" letter does not trigger the state filing periods either.  *See*, *e.g.*, *Kelly v. Allied Healthcare Prods., Inc.*, 1996 WL 787420, at *4 n.1 (E.D. Mo. Dec. 5, 1996) (observing that even though a plaintiff had received a federal "right to sue" letter, he had not met the "prerequisite for maintaining a civil action" under Missouri state law by obtaining a state letter); *Oliver v. New York Tel. Co.*, 1993 WL 1713471, at *3 (W.D.N.Y. Mar. 31, 1993) (finding an EEOC letter "unnecessary and irrelevant to the filing of a [New York] state law action"); *Mitchell-Carr v. McLendon*, 980 P.2d 65, 69-70 (N.M. 1999) (holding that worksharing agreement between EEOC and New Mexico anti-discrimination agency was limited to "initial processing of claims" and that the receipt of an EEOC "right to sue" letter did not trigger the thirty-day state filing period). Eureka attempts to distinguish these cases by arguing that the various state agencies all have "broader powers" than the TCHR. While there might well be some merit to this distinction regarding

19

the *Mitchell-Carr* opinion, which in reaching its holding specifically relies on the fact that the New Mexico agency has broader powers than the EEOC, Eureka's arguments about the other cases rest on distinctions without significance. Indeed, the court in *Oliver* based its decision on the language of the federal, not the state, statute; it reasoned that the "right to sue" letter contemplated in 42 U.S.C. §2000e-5(f)(1) had nothing to do with triggering state law claims. *See Oliver*, 1993 WL 173471 at *3. And *Kelly* relies only on the language of the state statute, and not the breadth of the state agency's authority, to find that the state "right to sue" letter is a "prerequisite" to a state employment discrimination claim. *See Kelly*, 1996 WL 787420, at *4 n.1. Eureka also attempts to distinguish these cases by arguing that the applicable state statutes are more explicit than the TCHRA in their identification of the state "right to sue" letter as the sole trigger for beginning the state filing period. But as noted in section II.B., *supra*, that distinction is meaningless because despite the ambiguity of the TCHRA, we conclude that the only mechanism contemplated by the statute for commencing the sixty-day filing period is the "right to file a civil action" letter issued by the TCHR. These cases are consistent with our conclusion that the Texas and federal letters are no more interchangeable than state and federal "right to sue" letters are interchangeable anywhere else. Eureka cites no cases, other than *Dean* and *Battee*,

20

which we reject, to suggest otherwise.

In sum, we find no reason–statutory or otherwise–to extend the scope of the EEOC's agency relationship with the TCHR beyond the receipt and processing of initial complaints to include the commencement of the sixty-day filing period for TCHRA claims by receipt of an EEOC "right to sue" letter.

II.  Vielma's Motion to Amend

In her second point on appeal, Vielma challenges the district court's denial of her motion to amend her complaint to assert federal age and disability discrimination claims.  This Court reviews a district court's decision to grant or deny a motion to amend for abuse of discretion.  *See Briddle v. Scott*, 63 F.3d 364, 379 (5th Cir. 1995).  We conclude that the district court did not tread beyond the bounds of its discretion in denying Vielma's motion.

Vielma filed her motion to amend on January 29, 1999, after the district court entered judgment.  While FED. R. CIV. P. 15(a) endows a district court with "virtually unlimited discretion" to allow amendments before entry of judgment, that discretion narrows considerably after entry of judgment.  *See* 6 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1489 (2d ed. 1990 & Supp. 1999).  Post-judgment amendment to a complaint can only occur once the judgment itself is vacated under FED. R. CIV. P. 59 or 60.  *See id.; see also Dussoy v. Gulf Coast Inv. Corp.*, 660 F.2d 597 n.1 (5th

21

Cir. 1981). In cases where a party seeks to amend her complaint after entry of judgment, "we have consistently upheld the denial of leave to amend where the party seeking to amend has not clearly established that he could not reasonably have raised the new matter prior to the trial court's merits ruling." *Briddle*, 63 F.3d at 380; *see also* WRIGHT ET AL., § 1489 ("A number of courts, exercising their discretion under Rule 15(a), have refused to allow a postjudgment amendment when the moving party had an opportunity to assert the amendment during trial but waited until after judgment before requesting leave."). This Court has followed that rule unwaveringly since the appearance of *Freeman v. Continental Gin Co.*, 381 F.2d 459, 469-70 (5th Cir. 1967), which observed that "[m]uch of the value of summary judgment procedure in the cases in which it is appropriate . . . would be dissipated if a party were free to rely on one theory in an attempt to defeat a motion for summary judgment and then, should that theory prove unsound, come back long thereafter and fight on the basis of some other theory." *Freeman*, 381 F.2d at 469-70; *see also Briddle*, 63 F.3d at 380 (citing cases).

In her initial complaint, Vielma asserted only state law claims under the TCHRA. In her brief, she conceded that her reason for doing so was her belief that it would be easier to prevail under the TCHRA claims. As the district court pointed out, she had ample notice of Eureka's summary judgment motion, including its

22

stated ground that her TCHRA claims were time-barred. Accordingly, Vielma could have sought to amend her complaint under Rule 15 to add her federal claims well before the court entered judgment. She did not do so, however, and the district court did not abuse its discretion in denying her leave to make a post-judgment amendment. *See Briddle*, 63 F.3d at 380; *Freeman*, 381 F.2d at 469-70.

## Conclusion

We REVERSE the grant of summary judgment regarding Vielma's state law claims and REMAND those claims for further proceedings. The denial of Vielma's motion to amend is AFFIRMED.