IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

———————————————

No. 99-60684

———————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

SANTIAGO J. ESCALANTE,

Defendant-Appellant.

———————————————

Appeal from the United States District Court
For the Southern District of Mississippi

———————————————

January 17, 2001

Before GARWOOD, HIGGINBOTHAM, and STEWART, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Santiago Escalante appeals the denial of his motion to suppress evidence found during a traffic stop. A sheriff's deputy stopped Escalante, ostensibly for careless driving, and discovered twenty kilos of cocaine in his car. Escalante challenges the constitutionality of the Mississippi careless driving statute and argues that the sheriff's deputy lacked probable cause to conduct the traffic stop. We affirm.

I

On the afternoon of July 11, 1998, Deputy Robert Sanders was parked on the northbound side of I-55 in Madison County,

Mississippi, near the 107 mile marker. When he noticed the brake lights of Escalante's car come on as it passed him, his suspicion was aroused. He also surmised that the vehicle may have been speeding, although he did not have a radar gun. He pulled onto the interstate and began to follow Escalante.

After catching up with Escalante, Sanders noticed Escalante watching him through his rear-view mirror, which caused Escalante to weave across the lane divider lines two or three times. Sanders pulled him over after following for about three miles. He testified that because Escalante was watching him and weaving, he thought that "something was wrong" and that Escalante was engaging in "careless driving."

During the stop, Escalante consented to a search of his car. Deputy Sanders, who had a drug-sniffing dog with him, found twenty kilograms of cocaine in a secret compartment in the trunk.

Escalante was charged with possession of cocaine with intent to distribute.[1] He moved to suppress the drugs found by the search, arguing that the deputy did not have probable cause to stop him. Deputy Sanders argued that his stop was justified under Mississippi's careless driving statute. The motion to suppress was denied. Escalante pleaded guilty, conditional on the appeal of the suppression ruling. He appeals.

---

[1] *See* 21 U.S.C.A. § 841(a)(1) (1999).

Escalante argues that the Mississippi careless driving statute is unconstitutionally vague. It reads: "Any person who drives any vehicle in a careless or imprudent manner, without due regard for the width, grade, curves, corner, traffic and use of the streets and highways and all other attendant circumstances is guilty of careless driving."[2]

We employ the two-part void-for-vagueness test described in *City of Chicago v. Morales*.[3] It states:

> Vagueness may invalidate a criminal law for either of two independent reasons. First, it may fail to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits; second, it may authorize and even encourage arbitrary and discriminatory enforcement.[4]

Although the language of the statute is broad, ordinary people can understand its meaning. The Mississippi Supreme Court, in *Leuer v. City of Flowood*,[5] has held that the terms "careless or imprudent" describe the "familiar tort law standard, requiring . .

---

[2] Miss. Code Ann. § 63-3-1213 (1996).

[3] 527 U.S. 41, 56 (1999) (plurality). *Morales* is the Court's most thorough discussion of void-for-vagueness in the criminal context in recent years. Although the *Morales* test appears in a plurality opinion, it encapsulates a longstanding test employed by the Court. *See Hill v. Colorado*, 120 S. Ct. 2480, 2498 (2000); *Kolender v. Lawson*, 461 U.S. 352, 357 (1983).

[4] *Morales*, 527 U.S. at 56.

[5] 744 So. 2d 266 (Miss. 1999).

. the same standard of care as a prudent person would [exercise]."[6] This ubiquitous standard does not defy common understanding but relies on it. In the context of rules of the road, few people misapprehend what constitutes careful driving and what does not.

Nor does the law lack "minimal guidelines" to prevent arbitrary enforcement. Because it applies only to conduct that is negligent, such that the conduct endangers the motorist or others, the Mississippi law does not empower the police to punish whatever conduct they choose.[7]

The Mississippi careless driving statute is constitutional.

### III

Escalante argues that the stop was illegal because Deputy Sanders did not have probable cause to stop him for careless driving. He contends that he did not violate the Mississippi careless driving statute, and that his weaving across the line is excusable because it was caused by Deputy Sanders following him.

---

[6] *Id*. at 270. As state courts are the ultimate authority on issues of state law, federal courts are bound by their interpretations of state law. *See Morales*, 527 U.S. at 61 ("We have no authority to construe the language of state statute more narrowly than the construction given by that State's highest court.").

[7] Cf. Morales, 527 U.S. at 60-64 (opinion of the court).

4

The traffic stop may have been pretextual.[8] But under *Whren v. United States*,[9] a traffic stop, even if pretextual, does not violate the Fourth Amendment if the officer making the stop has "probable cause to believe that a traffic violation has occurred."[10] This is an objective test based on the facts known to the officer at the time of the stop, not on the motivations of the officer in making the stop. On the other hand, if it is clear that what the police observed did not constitute a violation of the cited traffic law, there is no "objective basis" for the stop, and the stop is illegal.[11]

As Deputy Sanders followed Escalante, Escalante weaved across the divider lines at least twice. Under Mississippi precedent, Deputy Sanders correctly believed that Escalante's driving violated the careless driving statute.[12] The Court of Appeals of Mississippi,

---

[8] Officer Sanders's own testimony does not conceal the fact that at the time he suspected smuggling. Although he was not carrying a radar gun, he did have a drug-sniffing dog with him.

[9] 517 U.S. 806 (1996).

[10] *Id.* at 810.

[11] *United States v. Miller*, 146 F.3d 274, 279 (5th Cir. 1998). *See also United States v. Lopez-Valdez*, 178 F.3d 282, 288 (5th Cir. 1999).

[12] "[W]e interpret the state statute the way we believe the state Supreme Court would . . . . If a state's highest court has not spoken on the issue, we look to the intermediate appellate courts for guidance." *Vielma v. Eureka Co.*, 218 F.3d 458, 462 (5th Cir. 2000)(internal quotation marks omitted).

in *Guerrero v. State*,[13] held that a driver whose vehicle crossed over the yellow lines into the turning lane of a road "two or three times" violated the Mississippi careless driving statute, thereby justifying a traffic stop.[14] In *Guerrero*, as in the instant case, the police were following the defendant when they observed his vehicle cross over the lane markers; the court, however, did not discuss this fact.

Escalante contends that his weaving did not create probable cause to believe that he was driving carelessly. He argues that Deputy Sanders was following him closely, and he was paying attention to the sheriff's vehicle following him, as any prudent driver would. His weaving, he suggests, was merely the result of his divided attention.

Although the record does not establish how closely Deputy Sanders was following Escalante, Escalante's arguments have persuasive force, and we acknowledge that this is a close case. But we recognize that Deputy Sanders could have reasonably concluded that a careful and prudent driver would not swerve out of his lane even if his attention was drawn by a law enforcement vehicle approaching from behind. Indeed, perhaps the prudent driver should be more careful to maintain his lane in such a situation. In any

---

[13] 746 So. 2d 940 (Miss. App. 1999).

[14] *Id.* at 943.

case, we cannot conclude that Deputy Sanders lacked probable cause to stop Escalante for careless driving.

## IV

The Mississippi careless driving statute is constitutional, and Deputy Sanders had probable cause at the time of the stop to believe Escalante had violated the statute. Therefore, we hold that the stop and consequent consent search were constitutionally valid and AFFIRM the district court's denial of Escalante's motion to suppress.

ENDRECORD

CARL E. STEWART, Circuit Judge, dissenting:


I agree with the majority that Mississippi's careless driving statute is constitutional. However, on the issue of probable cause, I respectfully dissent.

When reviewing a suppression ruling, we view the evidence in the light most favorable to the prevailing party, and we accept the factual findings of the district court unless they are clearly erroneous or were influenced by an incorrect interpretation of the law. United States v. Rodea, 102 F.3d 1401, 1404 (5th Cir. 1996). Under the recitation of the facts by the majority, with which I do not disagree, I do not conclude that Deputy Sanders had probable cause to stop Escalante for careless driving.

Deputy Sanders testified that his suspicions were aroused when he noticed the brake lights of Escalante's car illuminate as it passed him. He also noted that the vehicle may have been speeding. However, this observation is surely makeweight because Deputy Sanders did not have a radar gun, and he did not articulate any observations consistent with an assessment of speeding. Additionally, Deputy Sanders made no claim that the mere brief illumination of the brake light was necessarily probative of any moving violation for which a ticket might have been written. As the majority opinion notes, Sanders candidly acknowledged at the suppression hearing that he suspected drug smuggling when Escalante passed him. Even allowing for our deferential standard for

reviewing the facts, it is fair to conclude that after following Escalante for three miles, Deputy Sanders had pulled very closely behind his vehicle. This conclusion is supported by Deputy Sanders' heavy reliance in his testimony on his observation of Escalante checking his rear-view mirror, an observation which indicates close proximity to the vehicle. As a result of Deputy Sanders' tailgating pursuit of the vehicle, Escalante weaved at least twice, crossing the white lane divider. The majority finds that, while Escalante's arguments that Deputy Sanders' conduct distracted him and caused him to weave across the divider lines are persuasive, Deputy Sanders could have reasonably concluded that a careful driver would not have reacted as Escalante did.

The candid testimony of Deputy Sanders reveals that he had no basis upon which to stop Escalante for a traffic violation but that he simply had a hunch. His main goal that day was obviously not to catch speeders but instead to employ his drug-sniffing dog. Notwithstanding the difficult job that law enforcement officers have and the preeminent societal need to vigilantly thwart drug trafficking, I cannot agree that though armed with a salutary purpose, an officer can manufacture probable cause by tailgating a motorist.

While it is true that under Whren v. United States, 517 U.S. 806, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996), a pretextual stop does not violate the Fourth Amendment if there is probable cause, a police officer cannot constitutionally create the very probable

9

cause upon which he relies to make a stop. Whren rejected the notion that the subjective intent of an officer can be used in assessing the constitutional reasonableness of a stop. See Whren, 517 U.S. at 813-14. However, the Court did not give police officers *carte blanche* to create probable cause.

There is an important distinction between pretext, addressed in Whren, and the creation of probable cause, which is the scenario in this case. Where an officer conducts a pretextual stop, he does "under the guise of enforcing the traffic code what [he] would like to do for different reasons." Whren, 517 U.S. at 814. However, in this case, Deputy Sanders proceeded after Escalante on a hunch, distracted him, and essentially created the probable cause that he needed to stop him. In other words, Deputy Sanders elicited a response from Escalante, whose conduct to that point had not given rise to probable cause, and then used that response against him.

In the context of the exigent circumstances exception, we have found that police officers cannot create urgent circumstances and then rely on them to make a warrantless search. See United States v. Blount, 123 F.3d 831, 838 (5th Cir. 1997) (en banc) ("It is true that the prosecution may not rely upon an exigency that the police themselves created through unreasonable investigatory tactics."); Rodea, 102 F.3d at 1409 ("Needless to say, the exigent circumstances exception does not apply if the Government created or 'manufactured' the exigency."). Similarly, here, Deputy Sanders'

reliance on the probable cause that he created is impermissible in my view.

Even assuming that Escalante's conduct fits within Mississippi's careless driving statute, and even given the elasticity of Whren, I cannot hold that an officer can simply have a hunch and then create probable cause to stop a motorist. Therefore, I respectfully dissent.